IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RESIDENTS AGAINST FLOODING, | § | |
| ANITA GIEZENTANNER, VIRGINIA | § | |
| GREGORY, LEE MARTIN, LOIS | § | |
| MEYERS, AND BAYAN RAJI, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | C.A. NO. H-16-1458 |
| | § | |
| REINVESTMENT Zone NUMBER | § | |
| SEVENTEEN, CITY OF HOUSTON, | § | |
| TEXAS (TIRZ 17), MEMORIAL CITY | § | |
| REDEVELOPMENT AUTHORITY (AKA | § | |
| TIRZ 17 REDEVELOPMENT AUTHORITY) | § | |
| AND THE CITY OF HOUSTON, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The above referenced action seeks declaratory and injunctive relief to enjoin the use of arbitrary government action that benefits private commercial interests and developers within Reinvestment Zone Number Seventeen City of Houston, Texas ("TIRZ[1]

---

[1] "TIRZ" stands for "tax increment reinvestment zone," pursuant to Chapter 311 of the Texas Tax Code, also known as the Tax Increment Financing Act. Plaintiffs allege that TIRZ 17 was created in 1999 because the area was "a menace to the public health, safety, morals or welfare in its present condition and use" because of the presence of unsanitary or unsafe conditions under Tex. Tax Code § 311.005(a)(1)("Criteria for Reinvestment Zone") and upon the City's finding that "improvements in the Zone . . . will be of general benefit to the municipality" under Texas Tax Code § 311.004(a)(7)(a)("Contents of Reinvestment Zone Ordinance or Order").

The City created TIRZ 17 on July 21, 1999 by passing Ordinance 1999-759. Subsequently the City created the Memorial City Redevelopment Authority (the "Authority") by adopting Resolution No. 2002-26 on August 14, 2002. Expanding from its original duty to undertake projects related to mobility and drainage to remedy "blight" conditions in the area, the purpose of TIRZ 17 expanded to

-1-

17") at the expense of substantial harm to hundreds of residential homes in nearby Memorial City neighborhoods, allegedly by Defendants' knowingly conveying stormwater out of the TIRZ 17 commercial areas into its residential areas, which lack adequate infrastructure to deal with the flooding. The flooding in effect allegedly seizes Plaintiffs' real property. Plaintiffs seek immediate prioritization of flood relief projects for their neighborhoods.

Pending before the Court are the following motions:

(1) Defendant the City of Houston's Rule 12(b)(1) (the "City's") motion to dismiss for lack of standing, Rule 12(b)(6) motion to dismiss for failure to state a claim,

---

"aid, assist and act on behalf of the City of Houston in the performance of the City's governmental and proprietary functions with respect to the common good and general welfare of the Memorial City Area." The names "TIRZ 17" and "the Authority" are used interchangeably throughout the complaint because they function in parallel as a single decision-making body. #14, ¶¶ 40-42, 47, 50. Ordinance 2002-26. Paragraphs 145-46 state, "The purpose behind the TIRZ is to give the tax revenue from a blighted area to local decision-makers so they can fix the blight themselves. Eventually, the local area is improved, attracting new development, the tax base increases, and the TIRZ is dissolved so that the tax revenue returns to benefit the entire city. Nevertheless this projected course of action is not happening with TIRZ 17. The tax base has increased far above projections, and TIRZ 17, which appears captured by private developers, is unduly profiting by the increased tax base, to the detriment of the public residential areas around it."

Plaintiffs describe multiple ways they have tried to use the political process to remedy the flooding problems in their residential areas, advocating before City Council and the TIRZ, without success. Plaintiffs object to Defendants' improving the blight within TIRZ 17 by transferring it to Plaintiffs' residential neighborhoods. Because past experience has dissolved any trust they had in Defendants, Plaintiffs conclude that they have to turn to litigation and have filed this action.

and, in the alternative, Rule 12(e) motion for more definite statement (instrument #5) regarding all claims brought by Plaintiffs the Residents Against Flooding ("RAF"), Anita Giezentanner, Virginia Gregory, Lois Meyers,[2] and Bayan Raji;

(2) Defendants Reinvestment Zone Number Seventeen, City of Houston, Texas (the "Zone") and Memorial City Redevelopment Authority's (the "Authority's"[3]) motion to dismiss, or, alternatively, for a more definite statement (#7);

(3) City's Motion to Dismiss (#17) First Amended Complaint; and

(4) Plaintiffs' motion for leave of Court to file their consolidated Sur-Reply (Sur-Reply, #19 at p.4, electronic numbering).

(1) Because Plaintiffs filed their amended complaint (#14) to expand their factual allegations in response to the Rule 12(e) motions for more definite statement and to address issues as they arose, (2) because the City in its reply (#17) asked the Court to apply its motion to dismiss and subsequent briefing to Plaintiffs' amended complaint (#14), which the City argues eliminated those of Plaintiffs' claims mooted by the passage of time, (3) because

---

[2] Plaintiffs Lois Myers and Virginia Gregory are members and supporters of the RAF. Non-plaintiff Roger Grindell, also an RAF member, was added in the last amended complaint #14 ¶ 178.

[3] Also known as the TIRZ 17 Redevelopment Authority.

Plaintiffs have not filed any objections to the City's motion for leave to file consolidated Sur-Reply, and (4) because much has changed since the case was commenced, the Court grants Plaintiffs' motion for leave of Court to file their consolidated Sur-Reply. #19 at p. 4 of electronic numbering. The Court will therefore review the pending motions to dismiss and other submissions with respect to this amended complaint (#14). Moreover, because the briefing has been so extensive and has evolved as issues were raised and argued by the parties, the Court finds that further amendments are not necessary.

Furthermore, because the Zone and the Authority filed consolidated responses to both motions to dismiss, which overlap on any number of issues, the Court summarizes each of the motions to dismiss first, and then addresses the responses, replies, and surreply.

## Plaintiffs' Allegations

Specifically, Plaintiffs complain that the City and the Authority have engaged in a pattern of: (1) implementing drainage and mobility infrastructure projects in and around TIRZ 17 that efficiently convey stormwater out of the TIRZ 17 commercial areas into the surrounding residential neighborhoods or into their over-strained storm systems; (2) approving private commercial development within TIRZ 17 that elevated the commercial properties, without any, or without sufficient, stormwater mitigation, causing more stormwater to enter the residential neighborhoods; and (3)

-4-

postponing infrastructure projects to help the residential neighborhoods, often in favor of non-essential projects that benefit private commercial interests," causing repeated and terrible flooding in hundreds of homes in the Memorial City area in violation of the United States and Texas Constitutions. #14, First Amended Complaint, ¶ 3.

Plaintiffs contend that Defendants had actual notice of the drastic need to improve the drainage conditions of TIRZ 17 from the repeated destructive floods (especially three "historic" floods in 2009, 2014, and 2015), from numerous complaints from Memorial area residents to the City, to its Planning Commission, to its Flood and Drainage Committee, and to City Council, and from multiple studies conducted by the City, the Authority, and engineering firms (including the Walter P. Moore engineering firm in 2003, Klotz Associates in 2004 and 2014, LAN Engineering in 2006, 2012, and 2014 Omega Engineering in 2008, and, in 2009, the Harris County Flood Control District ("HCFCD"), which regulates and maintains bayous and creeks). In addition, Plaintiffs claim that Defendants have a sophisticated hydrological model that can predict the depth of flooding in any area when new drainage infrastructure is added.

Currently, the Houston City Council appoints all Board members of the TIRZ, all of whom have significant property or business interests inside TIRZ 17, as well as those of the Authority; the same members are appointed to serve on both the TIRZ's and the

Authority's boards contemporaneously.  Upon information and belief,
the two boards hold simultaneous joint Board Meetings, deliberate
and take votes as a single unified entity without distinguishing
which one is taking an action, and keep minutes and records as if
they were a single committee.  The City retains oversight over TIRZ
17 and has statutory power over the Authority to submit projects
and budgets, and the City has final approval over all proposals.
Approval of the TIRZ projects is memorialized in City ordinances.
Such ordinances also approve its Capital Improvement Plans
("CIPs"), which are issued every five years.  *See* #14, Exhibits
B,C,D.  Now that TIRZ 17 and the Authority exist, the City no
longer performs its own drainage projects in or near the TIRZ.

Plaintiffs bring four causes of action:  (1) violation of
substantive due process under the Fourteenth Amendment[4] and 42
U.S.C. § 1983; (2) violation of the Texas Constitution Art. 1 § 19[5]

---

[4] Plaintiffs assert that the Fourteenth Amendment "prohibits
depriving any person of life, liberty or property without due
process of law" and "is intended to prevent government from abusing
its power."  #14, ¶ 188.  Plaintiffs have been deprived of use of
their homes by Defendants' arbitrary abuse of their power in
transferring the TIRZ 17 "blight" and flooding problems to
Plaintiffs, consistently postponing flood protection for
Plaintiffs, prioritizing private commercial interests over the
residential interests, approving nonessential projects such as
beautification projects for TIRZ developers over flood relief for
Plaintiffs, failing to build flood protection for Plaintiffs, and
failing to require mitigation (such as detention) to protect
Plaintiffs' homes. Plaintiffs maintain that Defendants' decisions,
actions, and inactions lack a rational basis.

[5] Article I, section 19 provides that no citizen of Texas shall
be deprived of his property except by due course of both procedural
and substantive law.  For the same reasons as the previous federal
cause of action, Plaintiffs claim they have been deprived of their

(also known as the due course of law provision); (3) violation of the Fourth Amendment and 42 U.S.C. § 1983 by unreasonable seizure of their property; and (4) a declaratory judgment for state and federal constitutional violations.

The declaratory and injunctive relief Plaintiffs seek is

to require immediate prioritization of flood relief projects for neighborhoods; to enjoin the Defendants from using TIRZ 17 funds for private development agreements to enjoin the City from approving new commercial building permits on large lots within TIRZ 17 until a finding is made that the development does not increase flooding risks in three residential neighborhoods; and to appoint a Special Master that will oversee expenditure of TIRZ 17 funds and oversee projects designed to alleviate flooding in the nearby residential areas. *Id.* at ¶ 24.

Plaintiffs note that the City participates in the Federal Flood Insurance program and is therefore subject to federal statutory regulation under 42 U.S.C. § 4001, *et seq.*, and the federal regulations enacted under the authority of these statutes. Under 44 C.F.R. Part 65, participating communities are required to assist FEMA's efforts in providing up-to-date information on special flood and flood-related erosion hazards. On information and belief, Plaintiffs assert that the City has not met these obligations.

**Standards of Review**

**Rule 12(b)(1)**

---

constitutionally protected property rights by Defendants' interference with Plaintiffs' use of their homes, by the transfer of TIRZ 17 blight and flooding problems to Plaintiffs, by favoring private commercial interests within TIRZ 17 over protecting Plaintiffs' homes, and by failing to build flood protection for Plaintiffs.

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here Plaintiffs, must bear the burden of proof by a preponderance of the evidence for a 12(b)(1) motion. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the

complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3*, citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, as is the case here, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id*. The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d

661, 663 (5th Cir. 1981). In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[6] has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

A court may *sua sponte* raise a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction at any time. *Westland Oil Development Corp. v. Summit Transp. Co.*, 481 F. Supp. 15 (S.D. Tex. 1979), *aff'd*, 614 F.2d 768 (1980). *See also Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 545 (5th Cir. 1990)("[F]ederal courts

_____

[6] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id.* To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

must address jurisdictional questions *sua sponte* when the parties' briefs do not bring the issue to the court's attention."). The Court may find lack of subject matter jurisdiction on any of the following three bases: (1) the complaint; (2) the complaint along with undisputed facts evidenced in the record; and (3) the complaint along with undisputed facts and the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The Court's dismissal of a case for lack of subject matter jurisdiction is not a judgment on the merits and does not preclude the plaintiff from pursuing his claim in a court that properly has jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

**Rule 12(b)(6)**

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *quoting In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 556 U.S. at 678. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

Dismissal under Rule 12(b)(6) is proper not only where the plaintiff fails to plead sufficient facts to support a cognizable legal theory, but also where the plaintiff fails to allege a

cognizable legal theory. *Kjellvander v. Citicorp*, 156 F.R.D. 138, 140 (S.D. Tex. 1994), *citing Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 591, 594 (5th Cir. 1991). "A complaint lacks an 'arguable basis in law' if it is based on an indisputably meritless legal theory' or a violation of a legal interest that does not exist." *Ross v. State of Texas*, Civ. A. No. H-10-2008, 2011 WL 5978029, at *8 (S.D. Tex. Nov. 29, 2011).

"Rule 12(b) is not a procedure for resolving contests about the facts or the merits of a case." *Gallentine v. Housing Authority of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 794 (E.D. Tex. Jan. 22, 2012), *citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1356, at 294 (1990).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the

issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"'[D]ocuments that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), *quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). By such attachments the defendant simply provides additional notice of the basis of the suit to the plaintiff and aids the Court in determining whether a claim has been stated. *Id.* at 499. The attachments may also provide the context from which any quotation or reference in the motion is drawn to aid the court in correctly construing that quotation or reference. *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, No. H-04-0087, 2005 WL 3504860, at 11 n.20 (S.D. Tex. Dec. 22, 2005). "Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL

786250, at *2 (N.D. Tex. Dec. 15, 1997), *citing Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When conclusory allegations and unwarranted deductions of fact are contradicted by facts disclosed in the appended exhibit, which is treated as part of the complaint, the allegations are not admitted as true. *Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir. Oct. 4, 2013), *citing Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

**Rule 12(e) Motion for More Definite Statement**

Rule 12(e) states, "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Such motions are not favored and are granted sparingly. *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *Conceal City, LLC v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013). The motion must be made prior to filing a responsive pleading and "must point out the defects complained of and the details desired." Rule 12(e). A court should only grant a motion for more definite statement when the complaint is "so excessively vague and ambiguous to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Phillips v. ABB Combustion Eng'g, Inc.*, Civ. A. No. 13-594, 2012 WL 3155224, at *2 (E.D. La. June 19, 2013). A motion for more definite statement should not be used as a substitute for discovery; it should be used as a remedy for

unintelligible pleading, not for correcting a lack of detail. *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001). The court has considerable discretion in deciding whether to grant such a motion. *Ditcharo v. United Parcel Service, Inc.*, 376 Fed. Appx. 432, 440 n.9 (5th Cir. 2010), *citing Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989).

The Court finds that none of pleadings is unintelligible here. If anything they are to obtain more detail and obtain discovery. There have been no objections to submissions. The exchange of information in responses, replies and the surreply have provided more detail that the Court has used in ruling on the motions.

**Rule 15(a)(2)**

Once a party has amended its pleading, it "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

<strong>Applicable Law</strong>

**Eleventh Amendment[7] Immunity**

---

[7] The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has long "understood the Eleventh Amendment to stand not so much for what it says, but for the supposition . . . which it confirms." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). It presupposes that "each State is a sovereign entity in our federal system" and that "'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Id.*, *quoting Hans v. Louisiana*, 134 U.S. 1, 10 (1890). Moreover for over a century

A claim of Eleventh Amendment immunity is a jurisdictional bar and must be addressed because, if meritorious, it deprives the court of subject matter jurisdiction over the suit. *Crane v. State of Texas*, 759 F.2d 412, 415 (5th Cir. 1985), *amended on other grounds on denial of rehearing,* 766 F.2d 193 (5th Cir. 1985), *cert. denied,* 474 U.S. 1020 (1985).

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Expense Bd.*, 307 F.3d 318, 326 (5th Cir. 2002), *citing* U.S. CONST. amend. XI; *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1990). That consent must be clear and unequivocal. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 88, 99 (1984). Although Congress has the power under the commerce cause to abrogate Eleventh Amendment immunity with regard to rights protected by the Fourteenth Amendment, it has not often done so. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979)(holding that 42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity.); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)(the Fourteenth Amendment grants Congress the power to subject states to suit in federal court and set aside the immunity bar of the Eleventh Amendment; "the Eleventh Amendment, and the principle of state sovereignty which it

---

the Supreme Court has ruled that "federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States." *Id., citing id.* at 15.

embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment.").[8]

The range of the Eleventh Amendment is not limited to lawsuits naming a state as a defendant and party of record; and often a suit will be against a political subdivision, state instrumentalities, and state agencies. 13 Wright & Miller *et al.*, *Federal Practice & Proc. Juris* § 3524.2 (Apr. 2017 update). Under the Eleventh Amendment, not all political subdivisions [of a state] are automatically immunized when the state is immunized." *Evans v. Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). The federal district court must determine whether that entity or individual is considered to be an "arm of the state" entitled to the state's immunity by examining "the essential nature and effect of the proceeding." *Ex parte Ayers*, 123 U.S. 443, 490 (1887); *Ex parte Young*, 209 U.S. 123, 151 (1906); *Ford Motor Co. v. Dep't of Treasury of State of Indiana,* 323 U.S. 459, 463 (1945). In addition in 1994 the Supreme Court held that "the impetus for the Eleventh Amendment" was "the prevention of federal-court judgments that must be paid out of a State's treasury." *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30. 404 (1994), *citing Fletcher, A Historical Interpretation of the Eleventh Amendment*, 35 Stanford L. Rev. 1033, 1129 (1993). The *Hess* court observed that "Courts of Appeals have recognized the vulnerability of the State's

---

[8] For example Title VII and the ADEA were passed by Congress pursuant to its powers under section 5 of the Fourteenth Amendment and abrogated the states' Eleventh Amendment immunity as to those statutes.

purse as the most salient factor in Eleventh Amendment determinations." *Id., citing inter alia Baxter v. Vigo Cty. School Corp.*, 26 F.3d 728, 732-33 (7th Cir. 1994)(most significant factor is whether the state is the real, substantial party in interest because it seeks to impose a liability that must be paid from public funds in the state treasury); *Regents of the University of California v. Doe*, 519 U.S. 425, 903-04 (1997)("[When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.); *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993)("The most important factor . . . is whether any monetary judgment would be paid out of the state treasury."), *cert. denied*, 510 U.S. 1119 (1994); and *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999), *cert. denied*, 528 U.S. 1004 (1999)(holding that although Texas district attorneys were created by the state constitution and were thus in some ways officers of the state, district attorney's office was not entitled to Eleventh Amendment immunity because the office was funded by the county and thus a judgment against the district attorney in his official capacity would expend itself on the county's treasury, the powers of the district attorneys were limited to the county, the state could not oversee prosecutorial decisions, and the district attorneys were elected by voters of the county). In 2002, the high court further opined, "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with

their status as sovereign entities." Thus its two purposes are to protect the State's treasury and its dignity.

The Fifth Circuit applies a six-factor test to determine whether an entity is entitled to Eleventh Amendment immunity as an arm of the state: (1) whether the damage award ultimately comes out of the State's treasury; (2) whether state statutes and case law consider the agency to be an arm of the state; (3) whether the entity is concerned with local or statewide problems; (4) the degree of authority independent from the state; (5) whether the entity can sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Clark v. Tarrant County, Texas*, 798 F.2d 736, 744 (5th Cir. 1986); *Correa v. The City of Bay City,*, 981 F. Supp. 477, 478-79 (S.D. Tex. 1997).

Generally counties, municipalities, municipal agencies, and officers of them are determined not to be arms of the state and not entitled to Eleventh Amendment immunity. In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 123 n.34 (1984), the Supreme Court concluded that "the Eleventh Amendment does not apply to counties and similar municipal corporations." *See also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979)(We have "consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as . . . municipalities, even though such entities exercise a 'slice of state power.'"); *Monell*, 436 U.S. at 690 n.54; *Owen v. City of*

*Independence*, 445 U.S. 622, 638 (Under federal law "there is no tradition of immunity for municipal corporations.")[9]

Because a state's Eleventh Amendment immunity extends to any state agency or entity deemed to be an "alter ego" or "arm" of the state, a plaintiff does not have to name the state as a party in a suit. *Id.*, *citing Vogt v. Bd. of Commissioners*, 294 F.3d 684, 688–89 (5th Cir. 2002).

## 42 U.S.C. § 1983

Section 1983 does not create substantive rights but is a procedural rule and offers a remedy providing a private cause of action to redress a violation of federal law; there must be an underlying federal constitutional or federal statutory violation as a predicate to liability under the statute. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989). To state a claim for a violation of 42 U.S.C. § 1983, a plaintiff must establish a deprivation of a right secured by the United States Constitution or other federal laws by a person acting under color of state law. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The main purpose of the Civil Rights Act was "to provide protection to those persons wronged by the ''[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.''" *Owen*, 445 U.S. at 650, *citing Monroe v. Pape*, 365 U.S. 167 (1961).

---

[9] State laws providing immunity from suit do not control the application of federal law. *Monell*, 436 U.S. at 695 n.59.

"In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which governmental units have been sued unless the state consents to suit against such entities. *University of Texas Medical Branch at Galveston v. Kai Hui Qi*, 402 S.W. 3d 374, 380 (Tex. App.--Houston [14th Dist.] 2013), *citing Texas Dept. Of Parks and Wildlife v. Miranda*, 133 S.W. 3d 217, 224 (Tex. 2004). The Texas Tort Claims Act provides a limited waiver of sovereign immunity, from both suit and from liability. *Miranda*, 133 S.W. 3d at 224, *citing* Tex. Civ. Prac. & Rem. Code §§ 101.001-.109. Section 101.021 of the Act states,

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if

> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

> (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

"[T]he government may not be sued in tort unless a separate, viable tort fits within the limited waiver provided by the [Texas Tort Claims] Act." *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 736 (S.D. Tex. 2010). The Texas Tort Claims Act does not include a waiver for "legislative functions of a government unit" and/or a City's discretionary powers. Tex. Civ. Prac. & Rem. Code §§ 101.052 and 101.056. Nor has the City "waived its immunity

by consenting to suit in federal court in the Texas Tort Claims Act for § 1983 claims." *Bishop v. City of Galveston, Tex.*, no. H-11-4152, 2013 WL 960531, at *9 (S.D. Tex. Mar. 12, 2013), *citing Quern v. Jordan*, 440 U.S. 332, 340-45 (1979). Nor does the Act waive sovereign immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." *Texas Dep't of Pub. Safety v. Petta*, 44 S.W. 3d 575, 580 (Tex. 2001); Tex. Civ. Prac. & Rem. Code § 101.057(2).

"The Congress which passed the Civil Rights Act of 1871 [the predecessor to § 1983 enacted pursuant to § 5 of the Fourteenth Amendment], . . . *did* intend municipalities and other local governments to be included among those persons to whom § 1983 applies." *Hutto v. Finney*, 437 U.S. 678, 702 (1979), *citing Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 665, 690 (1978)(holding that municipalities are "persons" to whom the Civil Rights Act of 1871 applies). Generally municipalities or local government units are not liable for the constitutional torts of their employees unless those employees act pursuant to an official action or with official approval. *Monell*, 436 U.S. at 663 n.7. "A municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Id.* at 690-91.

A § 1983 plaintiff must plead specific facts demonstrating a constitutional deprivation and may not merely rest on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

Moreover, because immunity of a municipal corporation from punitive damages was well established at the time § 1983 was enacted and there was no evidence that Congress intended to abolish that immunity, today punitive damages are not recoverable against a municipality in a § 1983 lawsuit absent express authorization by a statute. *County of Newport v. Fact Concerts*, 453 U.S. 247, 270-71 (1981); *Webster v. City of Houston*, 689 F.2d 1229, 1234-37 (5th Cir. 1982)(tracing legislative history of evolving § 1983).

"[T]he scope of a municipality's immunity from liability under § 1983 is essentially one of statutory construction." *Owen v. City of Independence, Mo.*, 445 U.S. 622, 635 (1980). "'By its terms, § 1983 'creates a species of tort liability that on its face admits of no immunities.'" *Id., quoting Imbler v. Pachtman*, 424 U.S. 409 (1976). "Its language is absolute and unqualified; no mention is made of any privileges, immunities, or defenses. Instead the statute states that it "imposes liability on 'every person' who, under color of state law or custom, 'subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Id., quoting* § 1983. Municipalities do not have immunity from suit under § 1983 flowing from its constitutional violations--neither absolute nor qualified. *Owen*, 445 U.S. at 637; *Leatherman v. Tarrant County Narcotics Intelligence and*

*Coordination Unit*, 507 U.S. 163, 166-67 (1993). Furthermore, a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983." *Owen v. City of Independents,* 445 U.S. 622, 638 (1980).

To state a claim for municipal liability under Section 1983, however, generally a plaintiff must identify (a) a policy maker, (b) an official policy, and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston ("Piotrowski II")*, 237 F.3d 567, 578 (5th Cir. 2001), *citing Monell*, 436 U.S. at 694. The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*).

"[N]either a State nor its officials acting in their official capacities are 'persons' under 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). "An action by a citizen against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office," is "no different from a suit against the State itself," and is barred by the Eleventh Amendment, subject only to the limited exception permitted by *Ex Parte Young*, 209 U.S. 123 . . . (1908)(action seeking prospective injunctive relief against state

officer permissible against ongoing violations of federal law).[10]

Alternatively a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id., citing id.*, and *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only when the municipal actors are *not* policymakers")[, *cert. denied*, 131 S. Ct. 3059 (2011)]. "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "The unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.*

---

[10] Although the language of 1983 is broad and expressly denies incorporation of common-law immunities, in some instances the Supreme Court "has found that a tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.'" *Owen*, 445 U.S. at 637-38 ("Where the immunity claimed by a defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity. But there is no tradition of immunity for municipal corporations, and neither history nor policy support a construction of § 1983 that would justify the qualified immunity accorded the City of Independence."). Examples of such immunity include absolute judicial immunity from liability for damages from acts committed within their judicial jurisdiction, local police officers' enjoyment of a good faith and probable cause defense to § 1983 actions, qualified immunity for prison officials and officers, absolute immunity for prosecutors in commencing and presenting the States case, etc. *Id.*

**Causes of Action with § 1983:**

**Fourth Amendment**

The Fourth Amendment, which is made applicable to the States by the Fourteenth Amendment, provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." A seizure of property takes place when "there is some meaningful interference with an individual's possessory interests in that property" by a government agent or official. *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009); *U.S. v. Jacobson*, 466 U.S. 109, 113 (1984), *quoted by Soldal v. Cook County, Ill.*, 506 U.S. 61 (1984).

**Fourteenth Amendment**

The Fourteenth Amendment ("no state shall deprive any person of life, liberty, or property, without due process of law") also forbids the state to deprive a person of property without due process. U.S. Const. amend. XIV, § 1. It has both substantive and procedural due process components. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).

Substantive due process prohibits 'arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Lewis v. Univ. of Texas*, 665 F.3d 625, 630-31 (5th Cir, 2011). The proper test for substantive due process is the deferential "rational basis" test: is the Defendant government's action rationally related to a legitimate governmental interest? *FM Prop.*

*Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).
Whether a rational relation exists is a question of law for the
court. *Simi*, 236 F.3d at 249. "'A violation of substantive due
process, for example, occurs only when the government deprives
someone of liberty or property, . . . only when the government
works a deprivation of a constitutionally protected interest.'"
*Id., quoting Brennan v. Stewart*, 834 F. 2d 1248, 1257 (5th Cir.
1988); *see also Dabbles v. Zoning Bd. Of Adjustment*, 53 F.3d 592,
601 (3d Cir. 1995)("[I]n situations where the governmental decision
in question impinges upon a landowner's use and enjoyment of
property, a land-owning plaintiff states a substantive due process
claim where he or she alleges that the decision limiting the
intended land use was arbitrary or capricious."). Substantive due
process analysis is appropriate only in cases in which government
arbitrarily abuses its power to deprive individuals of
constitutional protected rights." *Id.*

Under the procedural component of the Due Process Clause of
the Fourteenth Amendment the states must provide constitutionally
adequate procedures before depriving an individual of life, liberty
of property. Plaintiffs here must first show they have a protected
property interest and then that government action resulted in a
deprivation of that interest and that they failed to receive all
process due to them. *Jabary v. City of Allen*, 547 Fed. Appx. 600,
606 (5th Cir. Nov. 25, 2013), *citing Gentilello v. Rage*, 627 F.3d
540, 544 (5th Cir. 2010). It is not the deprivation of their
property rights, but the deprivation of their interest in that

property *without due process of law* that is unconstitutional. *Id.*
"Due Process' means an "opportunity to be heard at a meaningful time", i.e., "'prior to the deprivation of the . . . property right at issue,'" "in a meaningful manner." *Id., citing Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

### Texas Constitution, Article 1, Section 19

Article 1, § 19, also called the "due course of law" provision, provides a cause of action for deprivation of property: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." There is no implied private right of action for money damages under Article 1, section 19. *See Ray v. Houston Indep. Sch. Dist.*, Civ. A. No. H-10-312, 2010 WL 2545577, at *4 (S.D. Tex. June 21, 2010)(listing cases holding same). The standard of review for constitutional challenges on substantive due process grounds is the same for both state and federal due process clauses: "'If the laws passed are seen to have a reasonable relation to a proper legislative purpose and are neither arbitrary nor discriminatory, the requirements of due process are satisfied.'" *Lucas v. U.S.*, 757 S.W. 2d 687, 695 (Tex. 1988), *quoting Nebbia v. New York*, 291 U.S. 502, 537 (1933).

The due course of law provision, like the federal due process clause, contains a procedural and a substantive component. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W. 2d 618, 632-33 (Tex. 1996), *citing Texas Workers' Compensation Com'n*

*v. Garcia*, 893 S.W. 2d 504, 525 (Tex. 1995). With a procedural due process claim that a plaintiff is being deprived of a property right, the government must afford an appropriate and meaningful opportunity to be heard regarding a decision affecting the plaintiff's property rights. *Smith v. City of League City*, 338 S.W. 3d 114, 127 (Tex. App.--Houston [14th Dist.] March 17, 2011). *See also Jabary*, 547 Fed. Appx. at 606 ("Due process requires an 'opportunity to be heard at a meaningful time and in a meaningful manner.' Generally a "'meaningful time' means prior to the deprivation of the liberty or property right at issue.'"), *citing Matthew v. Eldridge*, 424 U.S. 319, 333 (1976), and *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012). A number of Texas courts have concluded that section 19 provides an identical guarantee to its federal due process counterpart. *Garcia*, 893 S.W. 2d at 525 (citing cases).

A plaintiff states a substantive due process claim when he alleges that a city took his private property for a private purpose, not a public use. *Id.* at 127-28. The Fifth Circuit, in *John Corp. v. City of Houston*, 214 F.3d 573, 582-83 (5th Cir. 2000), rejected "a blanket rule [that] the Takings Clause[11] subsumes any

---

[11] Unlike a "takings" clause under both Texas and federal Constitutions, which require the taker to provide "adequate compensation" (damages) or the prior owner's consent when he takes it for public use, Plaintiffs are seeking equitable relief in this suit. When property is held subject to the valid exercise of the police power, the municipality is not required to compensate the landowner for resulting losses. *Trail Enterprises, Inc. v. City of Houston*, 957 S.W. 2d 625, 630 (Tex. App.--Houston [14th Dist.] 1997, rev. denied), *cert. denied*, 525 U.S. 1070 (1999).

substantive due process claim relating to a deprivation of property."

"'[G]overnment action comports with substantive due process if the action is rationally related to a legitimate government interest.'" *Hidden Oaks Ltd. v. City of* Austin, 138 F.3d 1036, 1044 (5th Cir. 1998), *quoting* FM *Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). Whether such a rational relation exists is a question of law. *Id., citing id.* As the Fifth Circuit held in *Shelton v. City of College Station*, 780 F.2d 476, 477 (5th Cir. 1986), the "decisions of state zoning boards do not violate substantive due process unless the court finds no ''conceivable rational basis'' on which the board might have based its decision.'" *Id., citing Shelton*. If the City's action is rationally related to the protection of the health and safety of citizens, it is not actionable as a violation of the Fourteenth Amendment. *Hidden Oaks*, 138 F.3d at 1044. Since the Fourteenth Amendment to the federal Constitution was adopted, federal courts cannot rightfully interfere with the valid exercise of the police power to protect the lives, health, and property of citizens because there is no taking. *Mugler v. Kansas*, 123 U.S. 623, 661-62 (1887).

Nevertheless, "[t]he Supreme Court's entire 'regulatory takings' law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking." *John Corp. v. City of Houston*, 214 D.3d 573, 578 (5th Cir. 2000), *citing Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415

(1922). A violation of the Takings Clause does not occur until just compensation has been denied. *Id.*

## Continuing Violation

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), to clarify differences between traditional, discrete claims of discrimination and continuing violations under Title XII of the Civil Rights Act of 1964, the Supreme Court distinguished discrete acts (such as termination, failure to promote, refusal to hire, denial of transfer, which are individually actionable, and acts that are not, but that may in aggregation establish a hostile work environment claim. Discrete acts of discrimination must be asserted within the applicable statute of limitations period (the 180- or 300-day period for filing a charge with the appropriate state agency, the Texas Workforce Commission, or the EEOC, respectively); if filed later, they are time barred, even if related to subsequent acts that are timely raised. *Id.* at 113. "Each discriminatory [discrete] act starts a new clock for filing charges alleging that act." *Id.* "Claims alleging discrete acts are not subject to continuing violations doctrine." *Heath*, 850 F.3d at 737.

In contrast, acts which are not discrete and individually actionable and all acts constituting the claim are part of the same unlawful practice and when aggregated, make out a racial or sexual hostile work environment claim, which involves repeated conduct and the cumulative effect of ongoing acts and can happen at any time, as long as they are connected in a pattern of similar actions that

continues into the applicable limitations period. *Id.* at 105. In addition the Court found an exception to the statute of limitations in hostile work environment claims, which would not be barred "as long as all acts which constitute the claim are part of the unlawful practice and at least one act falls within the time period. *Id. at* 113. "[C]onsideration of the entire scope of work environment claim, including behavior alleged outside the statutory time period, is permissible for purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory time period." *Id.* As the Third Circuit characterized it, "a plaintiff's hostile environment claim 'is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant,' so 'the filing clock cannot begin running with the first act because at that point plaintiff has no claim; nor can a claim expire as to the first act because the full course of conduct is actionable infringement,'" *Heath v. Board of Supervisors for the Southern University and Agricultural and Mechanical College*, 850 F.3d 731, 737 (5th Cir. 2017), *quoting O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006).

*Morgan* rejected views of the Fifth and Seventh Circuits that "'the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct." *Heath*, 850 F.3d at 737. It also rejected the "on notice" factor: "the date on which a plaintiff becomes

aware that he or she has an actionable Title VII claim is of no regard in the context of determining the timeliness of a hostile work environment claim." *Id.*

The *Heath* panel concluded the continuing violation doctrine "applies with equal force" to § 1983 claims. It opined that *Morgan*'s 'distinction between 'continuing violations' and 'discrete acts' is not an artifact of Title VII, but rather a generic feature of federal employment law." 850 F.3d at 739-40. *See also Boswell v. Claiborne Parish Det. Ctr.*, 629 Fed. Appx. 580, 583 (5th Cir. 2015)(finding that a denial of medical attention and medication for Boswell's hernia was part of a continuing violation based on "a failure to provide needed and requested medical attention," which included an untreated cold that developed into bronchitis and walking pneumonia). As the *Morgan* court observed, 536 U.S. at 116 (citations omitted),

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. [The] "'mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." Such claims are based on the cumulative effect of individual acts.

The statute of limitations for § 1983 is derived from state law, which, as noted, in Texas is two years, while accrual is governed by federal common law. *Id.* at 740. "The continuing

violation doctrine is a federal common law doctrine governing accrual." *Id.*

## Mootness and Ripeness

Article III of the federal Constitution limits the jurisdiction of federal courts to live cases and controversies. U.S. Const. art. III, § 2; *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). This actual case-or-controversy requirement gives rise to the justiciability doctrines of standing, mootness, political question, and ripeness. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

In addition, the ripeness doctrine also rests on prudential reasons for refusing to exercise jurisdiction. *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 71 (1993). The main purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," to dismiss cases that are abstract and hypothetical. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "Ripeness is a necessary component of subject matter jurisdiction, and a court lacks the authority to adjudicate issues presented before they are not yet justiciable." *Goliad County, Texas v. Uranium Energy Corp.*, CIV. A. NO. V-08-18, 2009 WL 1586688, at *5 (S.D. Tex. June 5, 2009).

"Since standing and ripeness are essential components of federal subject-matter jurisdiction, the lack of either can be raised at any time by a party or by the court." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005)(*per curiam*). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id. In accord, Greenwich Ins. Co. v. Capsco Industries, Inc.*, No. 1:14CV297-LG-JCG, 2014 WL 5025856, at *1 (S.D. Miss. Oct. 8, 2014). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (Apr. 16. 2013), *citing Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990). "Jurisdictional issues such as mootness and ripeness are legal questions for which review is *de novo*." *Lopez v. City of Houston*, 617 F.3d 336, 339 (5th Cir. 2010).

That a claim that is "capable of repetition, yet evading review" is an exception to the mootness doctrine and to satisfy it a party must meet a two-prong test: "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Lopez*, 617 F.3d at 340, *quoting Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). For the second prong, "'the party invoking jurisdiction must show a 'demonstrated probability' or 'reasonable expectation,' not merely a 'theoretical

possibility,' that it will be subject to the same government action.'" *Id.*, *citing Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5ᵗʰ Cir. 2010).

## City of Houston's Motion to Dismiss under Rules 12(b)(1), 12(b)(6) or for More Definite Statement under Rule 12(e) (#5)

The dual nature, one part governmental and the other proprietary, of a municipality (municipal corporation) at common law gives rise to a particular kind of protection for the municipality from tort liability when it is acting in its governmental capacity. *Owen*, 445 U.S. at 644-45. As explained in *Owen*, *id.*,

> On the one hand, the municipality was a corporate body, capable of performing the same "proprietary" functions as any private corporation, and liable for its torts in the same manner and to the same extent as well. On the other hand, the municipality was an arm of the State, when acting in the "governmental" or "public" capacity, it shared the immunity traditionally accorded the sovereign.

The City of Houston first asserts that the state tort claims against it in this suit, which are all based on its performance of governmental functions,[12] are barred by the City's governmental

---

[12] The common law distinction between governmental and proprietary acts is key when determining whether the City has immunity from tort actions. As explained in *JAMRO Ltd. v. City of San Antonio*, No. 04-16-00307, 2017 WL 993473, at *3-4 (Tex. App.-- San Antonio March 15, 2017)

> In regard to governmental immunity, the Texas Supreme Court "has distinguished between those acts performed as a branch of the state and those acts performed in a proprietary, nongovernmental capacity." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W. 3d 427, 430 (Tex. 2016). A municipality is immune for acts done as a branch of the state, referred to as governmental functions. *Id.* at 433. Governmental functions are "functions enjoined on a municipality by laws . . . to be exercised by the municipality in the interest of the

general public."

"[S]overeign immunity does not[, however,] imbue a city with a derivative immunity when it performs proprietary functions." *Wasson Interests, Ltd.*, 489 S.W. 3d at 439. Proprietary functions are "functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality. *See* Tex. Civ. Prac. & Rem Code Ann. § 101.0215(b). A city is not immune in performing a proprietary function regardless of "whether a city commits a tort or breaches a contract, so long as in each situation the city acts of its own volition for its own benefit and not as a branch of the state." *Wasson Interests, Ltd.*, 489 S.W. 3d at 439. Therefore, "the common law distinction between governmental and proprietary acts--known as the proprietary-governmental dichotomy--applies in the contract claims context just as it does in the tort-claims context." *Id.* . . .

Chapter 311 of the Texas Tax Code, also known as the Tax Increment Financing Act, enjoins on the City the authority to create investment Zones to promote development or redevelopment of an area that would not occur solely through private investment. Tex. Tax Code Ann. §§ 311.001, *et seq*. (West 2015). When the City adopted the ordinance creating TIRZ 17 at issue in this case, the ordinance contained express findings that the TIRZ met the criteria for a reinvestment Zone contained in section 311.005(a)(1) and 311.005(a)(2). . . . Section 311.008(e) of the Code expressly provides, "The implementation of a project plan to alleviate a condition described by Section 311.005(a)(1), (2), or (3) and to promote development or redevelopment of a reinvestment Zone in accordance with this chapter serves a public purpose." *Id.* at § 311.08(e). Accordingly, the City's actions with regard to the TIRZ met the definition of a governmental function because Chapter 311 enjoined on the City has the authority to create the TIRZ to serve a public purpose in the interest of the general public. *See* Tex. Civ. Prac. & Rem. Code Ann. §101.0215(a).

Also, the ordinance allowed the use of the [Tax Increment Financing] for proposed public improvements for the Project which the ordinance defined to include the design and construction of storm water pollution prevention, streets and approaches, alleys, drainage, water, sewer, gas electric, street lights/signs, a bridge, street trees, and open space/park improvements. The legislature has defined government functions to include: (1) street construction and design, (2) bridge construction and

immunity, so this Court lacks subject matter jurisdiction over the claims against it.[13] *City of Friendswood v. Horn*, 489 S.W. 3d 515, 521-22 (Tex. App.--Houston [1st Dist.] Feb. 11, 2016, no pet.),[14] *citing Rusk State Hosp. v. Black*, 392 S.W. 3d 88, 95 (Tex. 2012)("When performing governmental functions, a political subdivision derives governmental immunity from the state's sovereign immunity. Governmental immunity encompasses the following two principles: (1) immunity from suit, which precludes a lawsuit against the entity unless the Legislature has expressly consented

---

maintenance; (3) sanitary and storm sewers; (4) waterworks; (5) parks; (6) maintenance of traffic signals and signs; and (7) water and sewer service. *See id.* Therefore, the City's actions with regard to the TIRZ were directed at financing public improvements which meet the definition of governmental functions . . .

and thus governmental immunity bars the Court from asserting subject matter jurisdiction over these actions done as a branch of the state.

[13] "Immunity from suit implicates a court's subject-matter jurisdiction and [in state court] is properly asserted in a plea to jurisdiction." *JAMRO Ltd. v. City of San Antonio,* No. 04-16-00307, 2017 WL 993473, at *2 (Tex. App.--San Antonio March 15, 2017), *citing Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W. 3d 154, 160 (Tex. 2016).

[14] Plaintiffs disagree, insisting that all the cases cited by the City are inapposite or misapplied. *City of Friendswood* involves a contract claim, but states that governmental immunity is waived for valid constitutional claims; *Sefzik* is an *ultra vires* action; *Harris County v. Kerr* sought monetary damages, so block quotes taken by the City out of context have little relevance to this suit. None of the cases cited by the City, insist Plaintiffs, over comes the long established rule of law that plaintiffs can sue governmental entities for equitable or injunctive relief for constitutional violations. *See Reyes v. N. Tex. Tollway Auth.*, 830 F. Supp. 2d 194, 206-08 (N.D. Tex. 2011)(applying state governmental immunity defense to state constitutional claim, but not to federal constitutional claim). Plaintiffs insist there is no applicable immunity doctrine to the instant suit.

to the suit, and (2) immunity from liability, which precludes
judgment against the government even if the Legislature has
expressly consented to suit (citations omitted).").[15]  The City of
Houston is immune from liability because no statute or common law
authorizes the relief Plaintiffs seek.[16]  With regard to the

---

[15] Plaintiffs contend that City's argument that it is
undertaking "government functions" is irrelevant because the City
bases its argument on the assumption that Plaintiffs are asserting
tort claims and have analyzed tort claims under that statute (#5 at
p. 7).  Plaintiffs maintain their complaint does not allege any
common law tort claims or any claims under the Texas Tort Claims
Act, but simply constitutional violations under federal and state
law.  In *City of Friendswood* the plaintiff brought both tort claims
and a constitutional takings claim.  The court discussed
Friendswood's performance of governmental functions, but limited
its analysis to the tort claims.  489 S.W. 3d at 522-24.  It did
not apply this analysis to the constitutional claim because a city
"does not have immunity from a valid [constitutional] claim." *Id.*
at 524.  Thus, insist Plaintiffs, the City's argument is not
apposite.

[16] Plaintiffs respond (#11 at p.10) that the City cannot rely
on governmental immunity because it does not apply.  *City of
Friendswood* involves a contract claim but acknowledges that
governmental immunity is waived for valid constitutional claims,
while *Sefzik* is an *ultra vires* action.  The Texas Supreme Court has
held that "[b]ecause Texas has no provision comparable  to § 1983,
. . . there is no implied right of action for damages arising under
the free speech and free assembly sections of the Texas
Constitution." *City of Beaumont v. Bouillion*, 896 S.W. 2d 143, 147
(Tex. 1995).  Texas courts have repeatedly ruled that a plaintiff
may sue a governmental entity for alleged violations of the Texas
Constitution if it seeks ***injunctive*** relief.  In *Bouillion*, 896 S.W.
at 148-49, the Texas Supreme Court opined that there is no
authority indicating that at the time the Texas Constitution was
written, it was intended to provide an implied private right of
action for damages for the violation of constitutional rights."
*Id.* at 148.  Furthermore, "the text of the Texas Bill of Rights
cuts against an implied private right of action for the damages
sought because it explicitly announces the consequences of
unconstitutional laws."  [In response this Court would emphasize
that Plaintiffs have sued only for injunctive and declaratory
judgment, and not for monetary damages.]

> The guarantees found in the Bill of Rights are excepted
> from the general powers of government; the State has no

second doctrine of proprietary functions a municipality was held to the standards of a private corporation: (1) it was held liable for its proprietary acts and for governmental functions regarding which the State had withdrawn the municipality's immunity by consenting to suit; (2) the second doctrine provided immunity only for its "discretionary" or "legislative" activities, but not for those that were "ministerial in nature. *Owen*, 445 U.S. at 644-45. Section

> power to commit acts contrary to the guarantees found in the Bill of Rights. Tex. Const. art. 1 § 29 ["To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."]. Section 29 has been interpreted as follows; any provision of the Bill of Rights is self-executing to the extent that anything done in violation of it is void. *Hemphill v. Watson*, 60 Tex. 679, 681 (1884). When a law conflicts with rights guaranteed by Article 1, the Constitution declares that such acts are void because the Bill of Rights is a limit on State power. *id.* The framers of the Texas Constitution articulated what they intended to be the means of remedying a constitutional violation. The framers intended that a law contrary to a constitutional provision is void. . . . Thus suits for equitable remedies for a violation of constitutional rights are not prohibited.

*Id.* at 148-49. *See also City of Houston v. Downstream Envtl., LLC*, 444 S.W. 3d 24, 38 (Tex. App.--Houston [1st Dist.] 2014)(holding that governmental immunity is waived for a due course of law claim.). The waiver of immunity also applies to suits for declaratory relief. *Bd. of Trustees of Galveston Wharves v. O'Rourke*, 405 S.W. 3d 228, 237 (Tex. App.--Houston [1st Dist.] 2013)("Governmental immunity 'does not shield a governmental entity from a suit for declaratory relief based on alleged constitutional violations.'"). Contrary to Defendants' contentions, plaintiffs can sue governmental entities for equitable or injunctive relief for constitutional violations. Furthermore no authority applies state governmental immunity to federal constitutional claims.

1983 was one of the statutes passed by Congress that abrogated a municipality's governmental immunity.  *Id.* at 645-48.

The City charges that here Plaintiffs are trying to shoehorn what are actually tort claims[17] into Section 1983 violations, but they fail to plead facts to meet the requirements of such a cause of action.[18]  Plaintiffs cloak what are actually tort claims under

---

[17]Disagreeing with Plaintiffs, this Court observes that in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999), the Supreme Court opined that

> there can be no doubt that claims brought pursuant to § 1983 sound in tort.  Just as common-law tort actions provide redress for interference with protected personal or property interests, § 1983 provides relief for invasions of rights protected under federal law. Recognizing the essential character of the statute, "'[w]e have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability.'"  *Heck v. Humphrey*, 512 U.S. 477, 4833 (1994), *quoting Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305 (1986).

[18] To state a claim for a violation of 42 U.S.C. § 1983, a plaintiff must establish (1) a deprivation of a right secured by the United States Constitution or federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. Municipal liability under 42 U.S.C. § 1983 requires the plaintiff to plead and prove three elements:  a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom.  *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Plaintiffs have failed to allege facts demonstrating an official policy or custom, a required element of a section 1983 claim against a municipality.  *Monell*, 436 U.S. at 694-95.  "While an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would bring."  *Piotrowski II,* 237 F.3d at 579, *citing Board of County Commissioners of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997).  Furthermore a municipality may be liable for damages only when an official policy or governmental custom of the municipality causes the deprivation or violation of the plaintiff's constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)(A governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between the municipal policy or custom and the alleged

a deceptive construction of constitutional law. Plaintiffs fail to state a claim under 42 U.S.C. § 1983 because they do not state facts that, if true, would demonstrate violations of their constitutional rights sufficiently to overcome Houston's governmental immunity, and they fail to allege causation. Claiming that Defendants' governmental actions to maintain and improve drainage and reduce the occasions and severity of Houston's flooding during rain storms violated Plaintiffs' constitutional rights, Plaintiffs fail to allege that Defendants took any action concerning Plaintiffs' real property or caused any particularized injury. Instead they claim that governmental action relating to other property, not owned by Plaintiffs (two roads, two apartment complexes, and two commercial developments), deprived Plaintiffs of substantive due process and property rights under the Fourteenth Amendment and constituted a government seizure of their property in violation of the Fourth Amendment[19] and their property rights in violation of Article I,

_____

constitutional violation."); *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Failure to allege a causal connection between the state official's wrongful act and his deprivation of life, liberty or property is fatal to his 1983 claim. Furthermore, merely negligent conduct by a government official that causes an unintended loss will not implicate the Due Process clause. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Nor have Plaintiffs asserted facts giving rise to any federally protected constitutional rights. The RAF does not claim it owns any property or has sustained any injury and has failed to plead facts showing it has associational standing for others. Furthermore, Plaintiffs' § 1983 claims are barred by the two-year statute of limitations. Thus Plaintiffs' claims should be dismissed under Rules 12(b)(1) and 12(b)(6).

[19] The City notes that Plaintiffs fail to state facts sufficient to state a Fourth Amendment claim, for which the elements are "(a) a meaningful interference with [their] possessory interests in [their] property, which is (b) unreasonable because

-44-

Section 19 of the Texas Constitution. Plaintiffs fail to plead how their constitutional rights were violated or to state any facts supporting the constitutional violation claims.

Plaintiffs fail to make separate allegations of deprivation of property rights in violation of the Texas Constitution, but only conclusory statements of some of the elements of a constitutional violation. They assert no facts showing that the City's drainage and mobility conduct was not rationally related to furthering a legitimate interest of Houston; instead they allege facts showing that Houston is engaged in regulatory functions that are legitimately undertaken by Houston for the welfare of its citizens.

Under Texas law, "[T]he government may not be sued in tort unless a separate, viable tort fits within the limited waiver provided by the [Texas Tort Claims] Act." *Rodriguez v. Christus Spohn Health Systems Corp.*, 628 F.3d 731, 736 (S.D. Tex. 2010).[20]

_____

the interference is unjustified by state law or, if justified, then uncompensated." *Severance v. Patterson*, 566 F.3d 490, 502 (5th Cir. 2009), *citing Presley v. City of Charlottesville*, 464 F.3d 480, 487-88 (4th Cir. 2006); U.S. Const. amend. IV. Plaintiffs allege no facts showing that the City interfered with Plaintiffs' possessory interests nor that the alleged interference is unjustified by state law. Road improvements near their homes do not state a claim for interference with Plaintiffs' possessory interests; private development of a grocery store or the design of a retention pool in other neighborhoods does not state a claim for interference with Plaintiffs' possessory interests; nor do drainage improvements for apartment residents in the vicinity of Plaintiffs' homes.

[20] Just as sovereign immunity usually bars a court's subject matter jurisdiction over a suit against a state unless it expressly consents to suit, governmental immunity similarly protects subdivisions of the State, including counties, cities, and school districts. *Powell v. Greenville Indep. Sch. Dist.*, No. 3:10-CV-0545-L-BH, 2010 WL 3359620, at *2 (N.D. Tex. June 24, 2010). Thus a political subdivision is not liable for the acts of its employees

The Texas Tort Claims Act does not waive immunity for claims like Plaintiffs' in this case because the actions complained of all fall under the "legislative function of a governmental unit" and/or the City's discretionary powers. Tex. Civ. Prac. & Rem. Code §§ 101.052, 101.056 (2013). Furthermore the City has not "waived its immunity by consenting to suit in federal court in the Texas Tort Claims Act for § 1983." *Bishop v. City of Galveston*, No. 11-4152, 2013 WL 960531, at *9 (S.D. Tex. Mar. 12, 2013), *citing Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Ross v. Texas Educ. Agency*, 409 Fed. Appx. 765, 768-69 (5th Cir. Feb. 1, 2011). Without a precise waiver defined by the Texas Legislature, immunity is not waived. *Tex. Dept. of Transp. v. Sefzik*, 355 S.W. 3d 618, 622 n.3 (Tex. 2011).

Nor can Plaintiffs avoid the City's governmental immunity from suit by characterizing their tort allegations as a suit for declaratory judgment. *Burkett v. City of Haltom City, Texas*, No. 4:14-CV-1041-A, 2015 WL 3988099, at *4 (N.D. Tex. June 30, 2015)("Any claim in the nature of a tort may only be brought pursuant to the Tort Claims Act. . . . Nor can plaintiff avoid

---

unless the Texas Tort Claims Act waives its governmental immunity. *Id.* The Texas Act "waives governmental immunity in three general areas: 'use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property.'" *Id.* , *citing Brown v. Montgomery County Hosp. Dist.*, 905 S.W. 2d 481, 484 (Tex. App.--Beaumont 1995); *see also* Tex. Civ. Prac. & Rem. Code § 101.021. For school districts the waiver is even more restricted, i.e., to tort claims arising out of the negligent use or operation of motor vehicles. Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.051. In addition governmental immunity is not waived for intentional torts. *Id.; see also* Tex. Civ. Prac. & Rem. Code § 101.057 (Texas Tort Claims Act).

dismissal by couching her claims as a request for declaratory judgment."), *citing City of Houston v. Williams*, 216 S.W. 3d 827, 828-29 (Tex. 2007). Without a clear, unambiguous legislative waiver, governmental immunity bars declaratory judgment actions against the state and its political subdivisions. *Sefzik*, 355 S.W. 3d at 621-22 & n.3. The Federal Declaratory Judgment Act permits a federal court to issue a declaratory judgment when there is "an actual controversy within its jurisdiction"--the issues are "live" or the parties have a "legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Plaintiffs in this suit have failed to allege facts showing there is a substantial and continuing controversy between them and the City.

Plaintiffs seek improper injunctive and declaratory relief in claiming that this Court should take over discretionary governmental functions beyond its Article III power. Courts lack jurisdiction to take on the discretionary functions of the other branches of government. The Supreme Court in *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 128-29 (1992), opined,

> Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, . . . involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges

interpreting the basic charter of Government for the entire country.

The City is also immune from the specific injunctive relief that Plaintiffs seek, asking the Court to act beyond its judicial role and assume Houston's zoning authority to decide which commercial permits the City should issue and to prioritize flood relief projects near Plaintiffs' properties. That relief is inappropriate, overly broad, and not "narrowly tailored to remedy the specific action necessitating the injunction." *Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006).

Plaintiffs briefly mention state-created danger as a theory for imposing liability on the City, i.e., but the Fifth Circuit has clearly stated that it has not recognized that claim. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 and n.5 (5th Cir. 2003); *Piotrowski II*, 237 F.3d at 584. Rule 12(b)(6) requires dismissal whenever a plaintiff's claim is based on an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)(mentioning as an example of a "meritless legal theory" "claims against which it is clear that defendants are immune from suit"). Even if state-created danger were recognized by the Fifth Circuit, Plaintiffs fail to allege the essential elements with supporting facts, as well as causation: the plaintiff must show that (1) "the state actors increased the danger to [them]; and (2) "the state actors acted with deliberate indifference." *Id.* To allege deliberate indifference for purposes of a state-created danger, plaintiff must show that the environment created by the state was dangerous, [the state actors] must know it is dangerous,

-48-

and they must have used their authority that would not otherwise have existed for the third party's crime to occur." *Johnson v. Dallas Indep. Sch. Dist.*, 38 F. 3d at 201. "The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id.*

In essence Plaintiffs seek to make the City help them before any others in or near TIRZ 17 with respect to Houston's flooding problems, infrastructure needs, and community development. They ask the Court to take over City government functions (i.e., requiring implementation of all recommendations of a 2014 drainage study to benefit Plaintiffs' neighborhood, requiring Defendants to build unidentified drainage projects under the Court's supervision, prevent Defendants from honoring a contract with a non-party developer, bar Defendants from entering into contracts with unidentified parties, exclude commercial buildings on lots greater than five acres unless they are overseen by the Court, require Court oversight of the expenditure of funds and drainage projects until the Court finds that Plaintiffs' homes will receive adequate flood protection, thus taking over the legislative and executive branches of City government for the benefit of the six Plaintiffs without regard to any other Houston residents. The City insists that the Court has no jurisdiction over these claims and the relief sought

because Houston has governmental immunity from both suit and liability regarding them.

The grounds for Plaintiffs' claims are six distinct occurrences of government conduct relating to road improvements, apartment drainage improvements, and commercial developments, all impacting drainage and causing dangerous flooding, over the last ten years. They provide few facts regarding these instances. Plaintiffs concede that they "live in and adjacent to the areas . . . [that are] flood prone." Without any allegations regarding causation, they argue that Defendants must be responsible for their properties flooding during three occasions of severe rainfall in the past seven years.

"Governmental functions" are "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty . . . ." Tex. Civ. Prac. & Rem. Code § 101.0215 (2013). They include "street construction and design," "sanitary and storm sewers," "sanitary and storm sewers," "building codes and inspection," "zoning, planning, and plat approval." *Id.* Governmental functions also include "community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code." *Id., citing* Tex. Loc. Gov't Code §§ 373.001, *et seq.*, and 374.001, *et seq.* The only conduct Plaintiffs challenge is Defendants' exercise of governmental functions designed to address flooding issues, e.g., widening and lowering Bunker Hill Road, replacing storm sewers, rebuilding the Bunker Hill bridge, approving construction of a 42" storm drain, and

approving a reimbursement contract for a developer's storm water detention.

Plaintiffs fail to specify any flood-impacted property except by vague "neighborhood" references, including their own unspecified properties, identify only the block where each individual plaintiff lives, and do not claim that Defendants intended to injure or deprive them of their property. Plaintiff speak only in generalities.

In *City of Friendswood*, 489 S.W. 3d at 523-24, in which governmental flood mitigation decisions were unsuccessfully challenged, the appellate court opined,

> Both federal and state laws permit and provide incentives for local governments to take measures to mitigate the potential loss of life and property from future flood events. *See* 42 U.S.C. § 4104c (anticipating that states and communities will use funds made available from the National Flood Mitigation Fund to plan and carry out activities designed to reduce risk of flood damage to structures covered under contracts for federal flood insurance); Tex. Water Code Ann. § 16.315 (West 2008)(entitled "Political Subdivisions; Compliance with Federal Requirements" and authorizing political subdivisions "to take all necessary and reasonable actions that are not less stringent than the requirements and criteria of the National Flood Insurance Program," including "[m]aking appropriate land use adjustments to constrict the development of land which is exposed to flood damage and minimize damage caused by flood losses," "engaging in floodplain management, adopting and enforcing permanent land use and control measures," and "participating in floodplain management and mitigation initiatives . . . developed by federal, state or local government.

In another action, *Harris County Flood Control Dist. v. Kerr*, No. 13-0303, 2016 WL 3418246, at *6 (Tex. June 17, 2016), Kerr brought claims for inverse condemnation and nuisance against the Harris County Flood Control District after a major flood.

> While compensation to those whose property is taken for public use is an important and constitutionally imposed obligation of democratic government, governments must also be allowed to survive financially and carry out their public functions. They cannot be expected to insure against every misfortune occurring within their geographical boundaries, under the theory that they could have done more. No government could afford such obligations.

*Id.*

The RAF alleges that it is a "nonprofit organization" with "associational standing on behalf of its members." The City points out that an association has standing to bring suit on behalf of its members when "(1) one or more of the organization's members would otherwise have standing in his or her right, (2) the interests which the organization seeks to protect in the lawsuit are germane to the purposes of the organization, and (3) the nature of the case does not require the participation of the individual members as plaintiffs to resolve the claims or prayers for relief at issue." *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 827, 827-28 (5th Cir. 1997), *citing Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1917); *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *Texas Association of Business v. Texas Air Control Bd.*, 852 S.W. 2d 440, 447 (Tex. 1993). The City charges that the RAF makes no factual allegations showing the third required element of associational standing, but only provides a "formulaic recitation of the elements," alleges that its "members, board members and supports reside in and own property throughout the Memorial City Area, including the Spring Branch north-side neighborhoods and the south-side neighborhoods including Fonn

Villas, Long Meadows, Memorial Pines, and Frostwood." These vague allegations should be dismissed under Rule 12(b)(6).

Alternatively Plaintiffs's amended complaint has affirmatively shown that their claims are barred by the two-year statute of limitations for section 1983 claims. Tex. Civ. Prac. & Rem. Code 16.003(a)(2005)("Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues."). Since there is no federal statute of limitations for § 1983, the "federal courts borrow the forum state's general personal injury limitations period." *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). On the other hand, federal law controls and defines the time of accrual as the time: "when plaintiff knows or has reason to know of the injury which is the basis of the action." *Lavallee v. Listi*, 611 F.2d 1120, 1131 (5th Cir. 1980). A claim usually accrues "when [a] plaintiff has a complete and present cause of action, i.e., at the point when "the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (997). The continuing violation doctrine applies "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment" and "the limitations period begins to run when the defendant has 'engaged in enough activity to make

out an actionable . . . claim.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d. Cir. 2015), *citing Morgan*, 536 U.S. at 114-15, 117. The City argues that Plaintiffs did not file this suit timely.

The City further contends that Plaintiffs fail to allege facts supporting any of the necessary elements for permanent injunctive relief:  "(1) that they have suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Northeastern Florida Chapter of the Ass'n of Gen'l Contractors of America v. City of Jacksonville, Florida*, 896 F.2d 1283, 1285 (11th Cir. 1990).  "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant [the plaintiff] 'clearly carries the burden of persuasion' as to the four prerequisites." *Id.*  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id., quoting Sampson v. Murray*, 415 U.S. 61, 88 (1974).  "[F]or an injunction to issue based on a past violation, [plaintiff] must establish that there is a 'real or immediate threat that he will be wronged again.'"  *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000).  Plaintiffs have not alleged facts to show any real or

immediate threat of flooding or the relief that will prevent future flooding, but they merely speculate and hypothesize.

> "There must be a *likelihood* that irreparable harm will occur.  Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.  Thus, a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury.  *A presently existing actual threat must be shown.*"

*U.S. v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001), *quoting* 9 Wright, Miller & Kane, *Federal Practice & Procedure:  Civil 2D* § 2948.1 at 153-56 (footnotes omitted, emphasis added).

Nor do Plaintiffs plead facts to show the threat of injury to them is greater than the potential injury to Defendants posed by an injunction.  *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).  Plaintiffs ask the Court to enjoin the City from issuing lawful commercial permits unless the Court or a Special Master finds the proposed development will not have an impact on flooding in Plaintiffs' neighborhood.  The City claims that because Houston lacks zoning regulations, denial of commercial permits in some neighborhoods, when Houston's permitting regulations are satisfied, will cause chaos and impose a hardship on Houston.  This Court should not usurp the City's discretion in fiscal and administrative oversight regarding approval of public improvements; judicial review of municipal decisions would breach the separation of judicial and legislative powers and prioritize the interests of one or more individual landowners over municipal policy set for the City as a whole.  Thus Plaintiffs' proposed injunctive relief is

outside the scope of the Court's jurisdiction and is unsupported by the law.

Finally and alternatively, the City moves for a more definite statement, specifically for Plaintiffs to replead in accordance with Rule 8 to cure the following problems: (1) failure to state the dates on which each alleged wrongful act by Defendants occurred; (2) specifically identify the location of Plaintiffs' homes and the dates on which each alleged harmful constitutional violation occurred to each particular location; (3) specify causation; (4) identify by specific boundaries or other identifying characteristics the members on whose behalf RAF allegedly sues in order to plead associational standing; (5) identify geographic boundaries in which each alleged constitutional violation occurred; (6) specify Defendants' inactions and how they caused harm to Plaintiffs; (7) state any alleged policy, practice or custom that is a basis of a § 1983 claim; (8) state facts showing the City's intent to deprive Plaintiffs of their constitutional rights; (9) specify each alleged action or inaction by each Defendant; and (10) distinguish between the Defendant for each alleged action or failure to act.

**Defendants the Zone and the Authority's Motion to Dismiss Or, Alternatively, For a More Definite Statement (#7)**

The Court only briefly references the issues raised by the City and just discussed unless the Zone and the Authority have different allegations about them.

The Zone and the Authority also contend with the City that Plaintiffs seek improper judicial relief, given our tripartite

system of government.  The judiciary is authorized to interpret and apply government policies, not write them.  What Plaintiffs seek is to have this Court displace "the Houston City Council's policy-making authority (and to act as a *de facto* zoning board) and dictate how, where, and when the Defendants and the City may fund and construct flooding and drainage improvements or approve new commercial development within the Zone."  Although Plaintiffs seek to recharacterize what at most is negligence into a series of constitutional violations, the actuality is that none of Defendants took any action or adopted any unconstitutional policy with the intent to flood Plaintiffs' properties.

The Zone and the Authority assert that Plaintiffs' claims should be dismissed for nine reasons.

First, the Zone is not a "suable entity," separate and apart from the City.  Instead the Zone is defined as a particular geographic area of the City, for which the City has not taken the steps to empower the Zone with jural authority.  Ex. A, p. 1 (creating and designating the Zone as a "contiguous geographic area of the City"); *Darby v. City of Pasadena*, 939 F.2d 311, 313 (5th Cir. 1991)("The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'  Fed. R. Civ. P. 17(b)."), and *Crull v. City of New Braunfels, Tex.*, 267 Fed. Appx. 338, 341-42 (5th Cir. 2008)[21](citing

---

[21] Plaintiffs also distinguish the situation in *Crull* from that in the instant case.  *Crull* stands for the proposition that a City police department is not a separate legal entity from the City.  *Crull*, 267 Fed. Appx. at 341-42.  Texas Home Rule cities are merely authorized by state law to operate a police department.  Tex. Loc.

*Darby*)("In order for a plaintiff to sue a department of a city, that department must enjoy a separate legal existence. Unless the political entity that created the department has taken 'explicit steps to grant the servient agency with jural authority, the department lacks the capacity to sue or be sued."). The Home Rule Charter of the City of Houston, which is a home rule municipality, reserved to the municipality the power to sue and be sued. Home Rule Charter, City of Houston, Texas, Art. II, § 1. Sections 311.003 and 311.008 of the Texas Tax Code grant the City all authority to organize a tax increment reinvestment zone and all powers necessary to carry out its purpose, as the City did in creating the Zone. *Darby*, 939 F.2d at 313 ("A Texas home rule city is organized not unlike a corporation. Like a corporation, it is a single legal entity independent of its officers. Also like a corporation, a Texas city is allowed to designate whether one of its own subdivisions can be sued as an independent entity. Absent this authorization, [Darby's] suit no more can proceed against the police department alone than it could against the accounting department of a corporation. . . . Pursuant to these principles, we have held that a political subdivision cannot pursue a suit on its own unless it is a 'separate and distinct' corporate entity. . . . [O]ur cases uniformly show that unless the true political entity has taken explicit steps to grant the servient agency with jural authority,

Gov't Code § 341.003. Unlike the tax increment zones, no statute permits powers to be delegated to the police department nor requires the City to reserve powers to itself. That is true for other city departments.

the agency cannot engage in any litigation except in concert with the government itself.")(citations omitted).[22]  In the instant suit, neither the Zone's enabling Ordinance nor the City's Charter grants the Zone the power to sue or be sued.

Second, the Zone and the Authority complain that Plaintiffs fail to identify a specific policy, practice or custom sufficient to state a plausible claim for municipal liability under section 1983, nor have they shown that it or the final policy maker (identified in the Complaint ¶ 53 as the City Council)had policy-making power :  "the Authority and TIRZ Boards recommend projects, *but the City Council has final approval*") was the moving force behind the alleged deliberate deprivation of Plaintiffs' rights under the Fourth and Fourteenth Amendments.  *See also* Home Rule Charter, City of Houston, Texas, Art. VII, § 10 ("All legislative powers of the City shall be vested . . . in the City Council."); Ex. A at § 4.  Plaintiffs have failed to do so and therefore have failed to state a claim for which relief may be granted under Rule 12(b)(6).

The Zone and the Authority also contend that Plaintiffs' § 1983 claims are barred by the two-year statute of limitations under Tex. Civ. Prac. & Rem Code §§ 16.003 and their due course of law claim

---

[22]  Plaintiffs distinguish *Darby* from the situation in the instant suit.  In *Darby*, 939 F.2d at 312, the plaintiff sued only the Pasadena Police Department and not the City.  The Fifth Circuit opined, "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence," and the City took "explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation **except in concert with the government itself.**" *Id.* at 313.  In contrast, Plaintiffs here have sued the City and TIRZ 17 as co-defendants in this suit.

under Article I, § 19 of the Texas Constitution is barred by the four-year residual statute of limitations under § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought no later than four years after the day the cause of action accrues."). *King-White v. Humble I.S.D.*, 803 F.3d 754, 760 (5th Cir. 2015)(generally § 1983 claims are subject to two-year statute of limitations); *Edwards v. Dist. Att. of Atacosa City*, No. 04-14-00611-CV, 2015 WL 4478086, at *2 (Tex. App.--San Antonio July 22, 2015, no pet.)(Texas Constitution's due course of law claim is subject to four-year statute of limitations). The Zone and the Authority maintain that the Complaint demonstrates that Plaintiffs' § 1983 claims accrued at the latest in 2009 because they allege wrongful conduct by Defendants as early as 2007, when Defendants widened and lowered Bunker Hill Road North of I-10 and replaced storm sewers in the Bunker Hill Drainage Project that caused flooding in the residential neighborhoods.

In addition, the due course of law claim also fails because Defendants have clearly stated a conceivably rational basis for their actions. *Univ. of Texas Med. Sch. at Houston v. Than*, 901 S.W. 2d 926, 929 (Tex. 1995)(Although textually different with one referring to "due process" and the other, "due course," the terms are "without meaningful distinction" and the Texas Supreme Court has "traditionally followed contemporary federal due process interpretations of procedural due process."); *Mabee v. McDonald*, 107 Tex. 139, ___ , 175 S.W. 676, 680 (Tex. 1915)("'Due process of law,'

as used in the fourteenth amendment, and 'due course of the law of the land,' as used in Article I, § 19, of the Constitution of Texas . . . according to the great weight of authority, are, in nearly if not all respects, practically synonymous."), *rev'd on other grounds*, 243 U.S. 90, 92 (1917). Plaintiffs must negate any possible rational, or "at least debatable, basis for Defendants' Zone-related initiatives." #7 at p, 3, ¶ 4. Plaintiffs' complaint concedes the existence of rational bases for Defendants' conduct in discussing the City Council's findings of benefit and public purpose in the Ordinances which created the Zone and the Authority (Ex. A at § 1(b)-(c); Ex. B at § 2 and Attachment A, art. IV), in Texas Tax Code §§ 3.11,003(a) 311.007(a)(7)(A), and 311.005, and in the Plan adopted by City Council, Ex. C, Attachment A pp. 1-2, Ex. E, Attachment A at p.2. The reasons for their actions (blight reduction, attracting and encouraging private commercial development, alleviating traffic congestion, elevating the tax base, upgrading water, sewage, and drainage infrastructure and improving the common good and general welfare of the Memorial City Area) are, as a matter of law, legitimate government interests. *See, e.g., Maryland Manor Associates v. City of Houston*, 816 F. Supp. 2d 394, 407 (S.D. Tex. 2011)(controlling traffic flow is a legitimate governmental interest); *St Joseph Abbey v. Castille*, 712 F.3d 215, 222 (5th Cir. 2013)(public or general welfare is a legitimate interest); *Texas Manufactured Housing Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996)(maintaining property values is a legitimate government interest); *Queeta's Investments,*

*Inc. v. City of Hidalgo*, No. M-04-272, 2005 WL 2416656, at *4 (S.D.
Tex. Sept. 30, 2005)(beautification is a legitimate government
interest); *Norfolk Fed'n of Bus. Districts v. City of Norfolk*, No.
96-1746, 1996 WL 671293, at *3 (4th Cir. 1996)(reduction of urban
blight is a legitimate government interest). Given these findings
and numerous rational bases for Defendants' actions, Plaintiffs have
not and cannot establish a plausible substantive due process claim
under either the United States or Texas Constitutions.

The Zone and the Authority also maintain that the Fifth Circuit
does not recognize the state-created-danger theory of liability as
a subset of substantive due process.

Plaintiffs' federal due process claim is not ripe because
Plaintiffs have not sought and have not been denied compensation
through state procedures, or, alternatively, it is merely a
mislabeled federal takings claim. *See John Corp.*, 349 F.3d at 583;
*Stewart v. City Of New Orleans*, 537 Fed. Appx. 552, 556 (5th Cir.
2013)(If a takings claim is brought with a substantive due process
claim, the court must perform a careful analysis to assess whether
the plaintiff has pleaded facts showing the two are independent.).

A takings claim is also not ripe for review until the claimant
seeks and has been denied just compensation through the proper state
procedures. *See Williamson County Regional Planning Commission v.
Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985); *Urban
Developers LLC v. City of Jackson*, 468 F.3d 281, 292-93 (5th Cir.
2006). Plaintiffs have not pleaded either. *Severance*, 566 F.3d at
497. The Zone and the Authority instead maintain that "under the

cloak of substantive due process, Plaintiffs complain only that they have 'been deprived of [their] constitutionally protected . . . property rights' without due process of law; they do not claim they have sought and been denied compensation through available state procedures. Therefore their due process claim is not ripe and should be dismissed. *Steward*, 537 Fed, Appx. at 556.

Next, the Zone and the Authority contend that since the Fourth Amendment targets "misuse of power," Plaintiffs have not pled and cannot plead an intentional or willful act of physical control, i.e., the taking must be willful. *See also Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996)("'[T]he Fourth Amendment addresses 'misuse of power.' [citation omitted], not the accidental effects of otherwise lawful government conduct."). Plaintiffs fail to state a Fourth Amendment claim because they do not allege a willful and intentional seizure of any specific property. Nowhere do Plaintiffs allege any conduct by Defendants evidencing a deliberate, willful decision to flood their particular properties. Instead they claim only that Defendants were generally aware that the Memorial City area and surrounding neighborhoods are susceptible to flooding and that a combination of private development, infrastructure improvements, failure to implement additional flood and drainage projects, and a series of natural disasters contributed to alleged flood damage to their properties. In other words, Plaintiffs allege at most that Defendants were negligent in the adoption and execution of their Zone-related policies and then try to convert that negligence claim into a Fourth Amendment violation. Simple

negligence or unintentional consequences are insufficient to state a viable Fourth Amendment claim. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)("Violation of the Fourth Amendment requires an intentional acquisition of physical control. . . The detention or taking itself must be willful."); *Laughlin v. Olszewski*, 102 F.3d at 193 ("While a seizure can occur where the specific object taken or detained is unintentional, the detention or the taking, itself, must be willful. . . . . "'[T]he Fourth Amendment addresses 'misuse of power,' [citation omitted], not the accidental effects of otherwise lawful government conduct.").

In a similar case to the instant one, *Harris County Flood Control Dist. v. Kerr*, 499 S.W. 3d 793 (Tex. 2016), a group of 400 homeowners claimed that a series of governmental decisions by the defendants, including approval of private commercial development and a failure to implement adequate drainage and storm water infrastructure projects resulted in repeated flooding of their properties in three severe storms. The Court noted,

> While compensation to those whose property is taken for public use is an important and constitutionally imposed obligation of democratic government, governments must also be allowed to survive financially and carry out their public functions. They cannot be expected to insure against every misfortune occurring within their geographical boundaries, under the theory that they could have done more. No government could afford such obligations.

*Id.* at *6.

The Zone and the Authority further assert that the RAF lacks associational standing to sue on behalf of its unidentified members because it has not alleged that it owns any property nor

demonstrated that any associational standing exists. *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997)("[A]n organization can assert 'associational standing' if it can show that (1) one or more of the organizations's members should have standing in his or her own right; (2) the interests which the organization seeks to protect in the lawsuit are germane to the purposes of the organization; and (3) the nature of the case does not require the participation of the individual affected members as plaintiffs.").

Last of all, the Zone and the Authority maintain that Plaintiffs are not entitled to declaratory or injunctive relief because they have failed to state a viable substantive claim against the Defendants.

The Zone and the Authority explain that the Zone is governed by a Board of seven directors (the "Board"), who are appointed by the City's governing body. Ex. A at § 4; Compl. at ¶49. The Board is authorized to prepare and propose project development and financing plans for the Zone and to make recommendations to the City Council regarding the administration, management, and operation of the Zone, but it may not approve or implement a project development or financing plan without approval and consent from the City. *Id.* The City Council also found that the Board "*may not exercise any power* granted to the City under § 311.008 of the Texas Tax Code without additional authorization from the City. *Id.* These powers include "(1) caus[ing] project plans to be prepared, **approv[ing] and implement[ing] the plans, and otherwise achieving] the purpose of**

*the plans*; (2) *enter[ing] into agreements*, including with bondholders, determined by the governing body of the municipality to be *necessary or convenient to implement project plans and achieve their purposes*; and (3) *acquir[ing], construct[ing], reconstruct[ing], or install[ing]* public works, facilities, or sites or other public improvements, including utilities, *streets*, street lights, water and sewer facilities, pedestrian malls and walkways, parks, *flood and drainage facilities*, or parking facilities . . . . Tex. Tax Code § 311.008(b)(emphasis added). Thus the City has final authority to approve, authorize and fund all projects. *Id.*; Ex. A at §4; Compl. at ¶53.

On August 14, 2002 the City Council adopted Resolution 2002-26, which approved the creation of the Authority, a local government corporation, and adopted the Articles of Incorporation and By-Laws, pursuant to Chapter 431 of the Texas Transportation Code. Exhibit B, City of Houston Resolution No. 2002-26; Compl. at ¶42. The City Council created the Authority as the operating and financing vehicle for the Zone to (1) aid, assist and act on behalf of the City in the performance of its governmental functions to promote the common good and general welfare of the Memorial City area of Houston and neighboring areas; (2) promote, develop, encourage and maintain employment, commerce, and economic development in Houston; and (3) aid, assist and act on behalf of the Zone in the (a) implementation of the Project Plan and Reinvestment Zone Financing Plan, (b) development of a policy to finance development of residential,

commercial and public properties in the [Zone], and (c) development and implementation of a development policy for the [Zone].

Subsequently the Zone prepared and proposed a Project Plan and Reinvestment Zone Finance Plan, which the City adopted in Ordinance No. 1999-852, which approved the Plan, and to which City Council twice approved amendments (Ordinance Nos. 2011-728 and 2014-1130 on August 23, 2011 and December 10, 2014, respectively). Ex. C, City of Houston Ordinance No. 1999-852; Compl. ¶¶43-44. Exhibits D and E, Compl. ¶43. The Plan was adopted to (1) preserve, conserve, and redevelop the Zone; (2) remedy specific conditions that, if not addressed, will pose long term risks to the area by increasing the number of unproductive, under-developed properties and decreasing area property values; and (3) create an environment attractive to new and additional high quality development. The Plan aimed to redevelop and improve road and street conditions; water, sewage and drainage infrastructure; public parks, green space and recreational facilities; and pedestrian improvements (e.g., sidewalk systems and ADA-compliant ramps) at key retail and commercial developments within the Zone. Ex. E, Attachment A at p.2. Plaintiffs' complaints arise out of these various projects implemented in the Zone or the City's failure to prioritize and complete sufficient additional storm water mitigation and drainage in areas experiencing more frequent flooding.

The RAF fails to allege facts to plausibly support its claim that it is a non-profit organization with associational standing to sue on behalf of its members. For associational standing RAF must

show "(1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organizations's purpose, and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." *Friends of the Earth, Inc.*, 129 F.3d at 827-28. The RAF provides no facts to support the first and third elements. The RAF states that "its members, board members and supporters reside in and own property throughout the Memorial City Area, including the Spring Branch north-side neighborhoods, and the south-side neighborhoods including Fonn Villas, Long Meadows, Memorial Pines and Frostwood. Compl. at ¶178. The RAF fails to state whether any of the unidentified members suffered flood damage sufficient to have standing to sue in their own right. Nor are there any allegations showing that the claims asserted and the relief requested do not require the participation of each of the RAF's members. The fact that RAF members Lois Meyers and Virginia Gregory have personally appeared to participate as individual plaintiffs suggests that such individual participation is necessary. Compl. at ¶¶30-31.

The Zone and the Authority claim that Plaintiffs' requests for declaratory and injunctive relief should also be dismissed. The Texas Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.001, *et seq.*, ("TDJA"), is a procedural, not a substantive, mechanism and thus does not apply to actions in federal court. *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998), *citing Gasperini v. Center for Humanities, Inc.*, 518 U.S.

425, 427 (1996)("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). So, too, must Plaintiffs' claim under the Federal Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201, requesting the Court to appoint a Special Master to assume the policy-making and implementation duties of the City, the Zone, and the Authority. Federal courts have broad discretion whether to grant or refuse a declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). Furthermore the Act is a procedural device that creates no substantive rights and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). The Zone and the Authority contend there is no justiciable controversy here that would support the kind of declaratory relief that Plaintiffs seek. Even if Plaintiffs state a plausible basis for declaratory relief, the kind they seek is at odds with the separation of powers in our tripartite system of government in that they want the Court to take over the City's role in promulgating land use and drainage policies, dictate how, where and when the Defendants and the City may fund and construct flooding and drainage improvements or approve new commercial development within the Zone.[23]   In addition, Plaintiffs' "formulaic recitation

---

[23] The separation of powers into three defined categories (executive, legislature, and judiciary) is the tripartite frame erected for our government by the Constitution to diffuse power and thereby protect liberty. *Bowsher v. Synar*, 478 U.S. 714 (1986). The Constitution did not "establish the three branches with "precisely defined boundaries." *INS v. Chada*, 462 U.S. 919, 962 (1983), *citing Buckley v. Valeo*, 424 U.S. 1, 121 (1976)(*per curiam*). The court has been cautious in insuring that the boundaries among the three branches should be established

of the elements of associational standing are insufficient to survive a Rule 12(b)(6) challenge.

So, too, are the facts insufficient to support a grant of injunctive relief. Moreover, "a party seeking a temporary injunction to compel a governmental agent to perform a mandatory statutory duty must plead and prove either (1) a statute expressly authorizing injunctive relief without a showing of a probable right to relief sought or (2) imminent and irreparable harm (or both a probable right to relief sought and a probable imminent, and irreparable injury). *Butnaru v. Ford Motor Co.*, 84 S.W. 3d 198, 204 (Tex. 2002). The Zone and the Authority insist Plaintiffs have not alleged, and cannot allege, facts giving rise to a plausible due

---

"'according to common sense and the inherent necessities of the government co-ordination.'" *Id.*, *quoting J.W. Hampton, Jr. & Co. v. U.S.*, 276 U.S. 394, 406 (1928). Nevertheless, "where one branch has impaired or sought to assume a power central to another branch, the Court has not hesitated to enforce the doctrine." *Id., citing Buckley*, 424 U.S. at 123.

The separation of powers doctrine functionally "may be violated in two ways. One branch may interfere impermissibly with the other's performance of its constitutionally assigned function. Alternatively, the doctrine may be violated when one branch assumes a function that more properly is entrusted to another." *INS v. Chada*, 462 U.S. at 963.

The application of the doctrine of separation of powers to the judicial branch "preserves an independent and neutral judiciary, relatively removed from the decisions and activities of the other two branches. Discharging tasks other that the deciding of cases and controversies would 'involve the judges too intimately in the process of policy and thereby weaken confidence in the disinterestedness of their judicatory functions.'" *In re Sealed Cases*, 838 F.2d 476, 512 (D.C. Cir. 1988). "Impartiality is one of the central, constitutionally-ordained requirements of the federal judicial office." *Application of President's Com'n on Organized Crime*. 763 F.2s 1191, 1197 (11th Cir. 1985).

process, Fourth Amendment or due course of law claim so they are not entitled to injunctive relief.

The Zone and the Authority alternatively seek a more definite statement to cure an ambiguity or vagueness or failure to provide sufficient information to allow a responsive pleading to be drafted regarding the following: (1) Plaintiffs' failure to identify any alleged policy, custom or practice that serves as the basis of the § 1983 claims; (2) the absence of any allegations that any policies or actions by Defendants were effected with the intent to flood Plaintiffs' specific properties; (3) Plaintiffs' global reference to "Defendants" without indication as to which of the three entities they have sued is engaged in which conduct; (4) Plaintiffs' failure to identify dates on which alleged wrongful act by which Defendant occurred; (5) Plaintiffs' failure to identify the specific location of their properties; (6) Plaintiffs' failure to specify whether their claims relate to the complete taking of their property or simply damage to their propery; (7) Plaintiffs' failure to plead whether they have sought compensation for the alleged damage to their properties through available state procedures; (8) the RAF's failure to name the members on whose behalf it allegedly sues for associational standing; and (9) Plaintiffs' failure to specify Defendants' "inactions" and how they contributed to causing harm to Plaintiffs.

Alternatively the Zone and the Authority ask the Court to require Plaintiffs to replead in accordance with Rule 12(e) the deficiencies listed above.

### Plaintiffs' Consolidated Response (#11)

Plaintiffs object that Defendants' overly demanding pleading standards disregard the fact that some facts are still unknown and will require discovery. Furthermore pleading all causation proof is not required at this stage, only "a short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8(a)(2). *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014)(*per curiam*)(summarily reversing dismissal when lower court imposed heightened pleadings standards in a case alleging § 1983 municipal liability). This action is firmly grounded in long established case law in which the Fifth Circuit has recognized that arbitrary decisions about the use of land may support a substantive due process claim under the Fourteenth Amendment and unreasonable interferences with one's interest in property may support a civil seizure claim under the Fourth Amendment.

Plaintiffs list the following as their responses in opposition to Defendants' motions to dismiss:

(1) Qualified immunity is not a defense to claims for declaratory and injunctive relief (*Yates v. Stalder*, 217 F.2d 332, 333 n.2 (5th Cir. 2000); regarding state constitutional claims, the Texas Constitution "authorizes suits for equitable or injunctive relief for violations of the Texas Bill of Rights" (*City of Beaumont v. Bouillion,* 896 S.W. 2d 143, 148-49 (Tex. 1995). Because Plaintiffs have pleaded for declaratory and injunctive relief, and not for

damages, no immunity doctrine applies.[24]  *Morse v. Frederick*, 551
U.S. 393, 432-33 (2007)(It is well established that in the context
of § 1983 and federal constitutional claims, a "'qualified immunity'
defense applies in respect to damages actions, but not to injunctive
relief.").  Moreover qualified immunity applies only to individual
officers in their individual capacities, but not to them in their
official capacities.  *Johnson v. City of Shelby*, 135 S. Ct. at 347
("[N]o 'qualified immunity analysis' is implicated. . . as
petitioners asserted a constitutional claim against the city only,
not against any municipal officer.").

2.   Under *Monell*, ordinances, decisions, actions or omissions by
Houston City Council and or the TIRZ Board constitute the requisite
"decision" or "policy" for § 1983 lawsuits against local government
units.  Municipalities and local government units are liable for
decisions made by their properly constituted bodies.  *Pembaur v.
City of Cincinnati*, 475 U.S. 469, 480 (1986).  An action by a city
council or other governing board satisfies *Monell*, 436 U.S. at 694
("[I]t is when execution of a government's policy or custom, whether
made by its lawmakers or by those whose edicts or acts may fairly
be said to represent official policy, inflicts the injury that the

---

[24] *See also Nueces County v. Ferguson*, 97 S.W. 3d 205, 217
(Tex. App.--Corpus Christi 2002, no pert.)(Suits under the Texas
Constitution "are limited to equitable relief and do not allow a
claim for monetary damages except to the extent specifically
enunciated in the constitutional provision."); *Patel v. City of
Everman*, 179 S.W. 3d 1, 13 (Tex. App.--Tyler 1004, pet. denied
("The due process provisions of the Texas Constitution do not
provide for a cause of action for damages, but rather only for
direct claims seeking equitable relief."); *Vincent v. W. Tex. State
Univ.*, 895 S.W. 2d 469, 475 (Tex. App.--Amarillo 1995, no writ).

government as an entity is responsible under § 1983."). *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 249 (1981); *Whisenant v. City of Haltom City*, 106 Fed. Appx. 915, 917 (5th Cir. 2004)("The City cannot be liable under § 1983 for having a 'policy' of wrongfully incarcerating indigent defendants because the relevant decisions were made by a municipal judge acting . . . 'as a state judicial officer'" because "'his acts and omissions were not part of a city policy or custom. A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy even if the conduct parallels or appears entangled with the desires of the municipality.'"). City ordinances containing City Councils's actions approving the TIRZ Board's CIPS are decisions or policies giving rise to liability under *Monell*.

3.    There is precedent in the Fifth Circuit and in Texas for substantive due process claims based on deprivation of property rights. *Mikesa v. City of Galveston*, 451 F.3d 376 (5th Cir. 2006)(reversal of district court's summary judgment dismissal of suit against the City of Galveston for refusing to grant permits for reconnection of appellants' homes to public utilities after a tropical storm on the grounds that the City's actions were rationally related to the protection of open access to the public beach (substantive due process) and to the City's obligation to follow state law to protect the public beaches from interference (equal protection). The City had a legitimate state interest in protecting public access to the public beach but failed to provide a rational reason why refusing to reconnect utilities to houses

-74-

found on a public beach furthers the end of protecting public access to public beaches (the requisite rational relationship)). *Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 399-400(S.D. Tex. 2011); *Smith v. City of League City*, 338 S.W. 3d 114 (Tex. App.--Houston [14th Dist.] 2011).

Plaintiffs still argue that the state-created-danger theory provides an alternative basis for alleging a substantive due process claim even though the Fifth Circuit has expressly stated that it has not adopted it so far. *Scanlon v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003).

4. TIRZ erroneously mislabels Plaintiffs' Fourteenth Amendment claim as a takings claim. The Fifth Circuit has clearly rejected TIRZ's suggestion that the Takings Clause subsumes all claims involving property destruction resulting from governmental acts. *John Corp.*, 214 F.3d 573, 582-83 (5th Cir. 2000)(rejecting view that the applicability of one constitutional amendment pre-empts the guarantees of another; "[A] blanket rule that under *Graham [v. Connor*, 490 U.S. 386, 395 (1989),[25] the Takings Clause subsumes any substantive due process claim relating to a deprivation due process claim is both inconsistent with our precedents and with the approach taken by a majority of other circuit courts."). In addition according to the amended complaint Plaintiffs are not seeking

---

[25] *Graham* held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a *particular sort of government behavior*, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"

compensation, while a takings claim turns on the denial of just compensation.

5. Plaintiffs have pled a Fourth Amendment claim, including willful conduct. The Fourth Amendment protects possessory interests in one's property. Plaintiffs allege that Defendants have seized their homes and possessory interests by their willful actions, which caused flooding in Plaintiffs' homes. *Severance*, 566 F.3d at 502.

6. Plaintiffs have properly pleaded relief. It is premature to ask whether Plaintiffs have met the standard for entitlement to equitable remedies, an issue that is properly raised on a preliminary injunction hearing or after a trial on the merits.

7. Plaintiffs' claims are not time barred, are ongoing, and their limitations defense is prematurely raised. Statute of limitations is an affirmative defense for defendants, not a pleading requirement for plaintiffs, and the defense usually must be resolved through discovery and summary judgment or trial. *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011).[26] Plaintiffs maintain that if the Court reaches the limitations issue, their claims fall under the continuing violation theory. *Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir. 1989)("'If . . . the statutory violation does not occur at a single moment, but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only

---

[26] The Fifth Circuit also stated in *Frame*, 657 F.3d at 240, "To be sure, a complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling."

those violations preceding the filing of the complaint by the full limitations period are foreclosed.'")(citations omitted).

8. Plaintiffs insist that TIRZ 17 may be sued because the City Ordinance, which conveys on the TIRZ "all powers" that the City has (with a few enumerated exceptions defined).[27] Furthermore TIRZ is an alter ego of the Authority: the two are alter egos, which are suable as such, have identical boards and board decisions, and the decisions are indistinguishable.

9. The RAF has associational standing because it has members that can sue in their own right, now including three named plaintiffs who, Defendants concede, can sue. The third element of associational standing, that an association's claims not require participation of individual members, is a prudential, not a constitutional, requirement and "focuses on matters of administrative convenience and efficiency." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Board*, 627 F.3d 547, 551 (5th Cir. 2010). In addition, Plaintiffs seek only equitable relief, so prudential concerns are not at issue. *Id.; Warth v. Seldin*, 422 U.S. 490, 515 (1975).

---

[27] Plaintiffs are in error here. The Fifth Circuit's "cases uniformly show that unless the true political entity [here, the home rule city] has taken explicit steps to grant to the servient agency jural authority, the agency cannot engage in any litigation except in concert with the government itself." *See Darby*, 939 F. 2d at 313; *in accord Thomas-Melton v. Dallas County Sheriff's Dept.*, 39 F.3d 320 (Table), No. 94-10049, 1994 WL 612546, at *2 (5th Cir. 1994). The subdivision must have "a separate legal existence," i.e., it must be a "separate and distinct corporate entity" apart from the city. *Skyway Towers LLC v. City of San Antonio*, No. 5:14-CA-410-DAE, 2014 WL 3512837, at *5 (W.D. Tex. July 14, 2014). **This requirement is not met by a general grant of "all powers."** *Id*.

10. While Plaintiffs claim they have met all pleading standards, in an abundance of caution they ask leave to file an amended complaint.

Plaintiffs, asserting that Defendants rely on a constricted interpretation of *Monell* and its progeny, highlight the following passage in *Monell*, 436 U.S. at 690 (emphasis added):

> [M]unicipalities and other local government units . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes **a policy statement, ordinance, regulation, or decision** officially adopted and promulgated by that body's officers.

*See also Pembaur*, 475 U.S. 480 ("No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body-- whether or not that body had taken similar action in the past or intended to do so in the future--because even a single decision by such a body unquestionably constitutes an act of official government policy."). Under various standards that identify or define official policy, the City of Houston, acting through its City Council, is a "policy maker"; or TIRZ 17 and the Authority acting through their unified board, is the other "policy maker"; or TIRZ 17 board decisions (CIPs and budgets) are presented to City Council, which approves them in City Ordinances,[28] are ordinances, decisions or policies under *Monell*. Furthermore the City's action in approving the project plans and the TIRZ actions in proposing project plans

---

[28] See City Ordinances attached to First Amended Complaint.

are the "moving force" in the constitution violations under *Monell* because they led to the flooding of Plaintiffs' homes.

The due process clause, in addition to "'guarantee[ing] more than fair process,'" also "cover[s] a substantive sphere." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). "[T[he touchstone of due process is the protection of the individual against arbitrary action of government," whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. *Id.* at 845-46.

The Fifth Circuit has concluded that a substantive due process claim has two elements: (1) whether the plaintiff has been deprived of a constitutionally protected right, and (2) whether the governmental action is rationally related to a legitimate governmental interest. *Mikeska v. City of Galveston*, 451 F. 3d 376, 379 (5th Cir. 3006). A property right in one's home, which Plaintiffs have alleged, is constitutionally protected and sufficient for substantive due process. *Id.* The remaining question for this Court is "[w]hether Plaintiffs have alleged sufficient facts, liberally construed, that call into question whether Defendants have a rational basis for approving TIRZ drainage projects and deferring residential projects, given their knowledge about flooding risks and the need for regional detention in the neighborhoods surrounding TIRZ 17." #11 at p.18. Plaintiffs urge the Court to allow additional factual development before making a determination.

Plaintiffs state that they do not object to remedying of blight for the TIRZ 17 community as long as it is not transferred to surrounding communities, of which they do complain. These latter activities transferring the blight to their homes are the basis of Plaintiffs' due process claim and they have no rational basis. The rational basis inquiry is made in reference to the decisions, actions, inactions and approvals of the City of Houston and TIRZ 17 year after year regarding reducing flooding in TIRZ 17 but failing to relieve it in Plaintiffs' residential areas. Plaintiffs argue that spending tens of millions of dollars of public money to improve flooding in one area that directly causes increased flooding in adjacent areas without any effort to alleviate it is irrational, arbitrary, and an abuse of governmental power.

Plaintiffs continue to insist they have stated a substantive due process claim under the state-created-danger theory. Although the Fifth Circuit has not adopted it, the Circuit has defined its parameters under the substantive due process clause: "a plaintiff must show the defendants used their authority to create a dangerous environment for the plaintiff and that defendants acted with deliberate indifference to the plight of the plaintiff." *Scanlon*, 343 F.3d at 537-38. *See also Johnson v. Dallas I.S.D.*, 38 F.3d at 200 (explaining that every court to have accepted the theory has "uniformly held that state actors may be liable if they created the plaintiffs' peril, increased their risk of harm, or acted to render them more vulnerable to danger."). Plaintiffs contend that they have pled facts that adequately support the state-created danger

theory in the face of a Rule 12(b)(6) challenge: (1) Defendants'
actions have created a dangerous environment for Plaintiffs by
sending floodwaters into the neighborhoods without instituting any
drainage improvements as protection to offset the floodwaters; and
(2) Defendants acted with deliberate indifference by ignoring
Plaintiffs' repeated and vocal complaints and numerous engineering
studies--which Defendants, themselves, commissioned--showing the
desperate need of flood relief and a worsening situation.

TIRZ erroneously insists that Plaintiffs' Fourteenth Amendment
claim is a "mislabeled" takings claim that is not ripe. A takings
claim requires the denial of just compensation for property loss.
Plaintiffs here have not alleged they are seeking damages. The
Fifth Circuit has held that "substantive due process claims alleging
deprivations of property are *not* necessarily subsumed under the
Takings Clause." *Simi Invs. Co. v. Harris County*, 236 F.3d 240, 248
(5th Cir. 2000)(discussing *John Corp.*'s holding)(affirming district
court's granting of damages to a plaintiff for a substantive due
process claim even after the plaintiff admitted its takings claim
was not ripe). Plaintiffs, however, assert that the Takings Clause
does not apply to the present case.

Plaintiffs also insist that they state a cause of action for
substantive due course of law under the Texas Constitution when the
government deprives individuals of constitutionally protected rights
by an arbitrary use of its power, and that such a claim for
protection is congruent with one under the United States
Constitution. They have stated a claim under the Texas Constitution

in alleging that they have a property interest in their homes, that Defendants' actions arbitrarily favored commercial property interests over their residential property interests, and Defendants' actions lack a rational basis in failing to provide flood relief for Plaintiffs after sending stormwaters into their neighborhoods.

Plaintiffs maintain that they have also stated a claim for an unreasonable Fourth Amendment seizure of their property by the government in using the public fisc to send stormwater into Plaintiffs' private, real-property homes where no flooding had previously occurred.

Plaintiffs also contend that the federal standard for entitlement to injunctive relief (plaintiff has suffered an irreparable injury; the remedies available at law are inadequate to compensate for that injury; given the relative hardships a remedy in equity is warranted; and the public interest would be served by a permanent injunction) is not applicable for Rule 12(b) motions. If the Court decides to apply it, Plaintiffs cite as an irreparable injury that Plaintiffs' homes have flooded multiple times, as an inadequate remedy at law that Plaintiffs have spent thousands of dollars for repairs with each flood, and feel unsafe in their own homes for fear of rain entering them; after all the harm to plaintiffs, the equities balance in their favor; and the continuing nature of Plaintiffs' injuries render a remedy of money damages inadequate.

Plaintiffs maintain that they have properly pleaded a controversy between the parties for a claim under the Federal

Declaratory Judgment Act. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998)("A federal court may not issue a declaratory judgment unless there exists 'an actual controversy.'").

In addition, Plaintiffs assert their § 1983 claims are not time-barred. Defendants have prematurely challenged limitations because they sufficiently allege facts showing that Defendants' actions are ongoing and that their 1983 claim did not accrue until less than two years before they filed suit. "Because the statute of limitations is an affirmative defense and not a pleading requirement, it is an issue that must be resolved through discovery and summary judgment or trial." *Frame*, 657 F.3d at 240. Thus they should not be dismissed before the opportunity for discovery and summary judgment motion practice. Moreover federal law governs when the cause of action accrues, that is "when the plaintiff becomes aware he has suffered an injury or has sufficient information to know that he has been injured." *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991). Under the continuing violation doctrine, the Supreme Court has held that claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful [] practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *Havens Realty Corp v. Coleman*, 455 U.S. 363, 380-81 (1982); *Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir. 1989)(applying continuing violation doctrine to § 1983 due process claim and finding lawsuit was timely as to most claims and "was not barred for purposes of injunctive and declaratory relief"); *Dews v. Town of Sunnyvale*,

*Texas*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000)(applying continuing violation doctrine to § 1983 claim and finding no limitations bar). Plaintiffs assert the doctrine applies here. Plaintiffs have pled "continuous unlawful acts by Defendants and identified "at least one violation that is within the statute of limitations." *SEC v. Jackson*, 908 F. Supp. 2d 834, 873 (S.D. Tex. 2012). The TIRZ 17 Board of Directors typically submits CIPs to the City Council for each calendar year, and for the 2015 calendar year the City Council approved the CIP in December 2014--less than two years from when Plaintiffs filed their suit. First Am. Compl. ¶ 53 (citing Exh. D). That CIP contemplated projects for TIRZ 17, but no flood control projects to benefit Plaintiffs' residential neighborhoods despite Defendants' engineering reports that recommended flood alleviation projects which, if implemented, would have provided flood relief to numerous homes before the April 2016 flood event.

Furthermore Plaintiffs' requested relief shows that this case is not time barred. They do not ask for damages for flooding before 2014. Instead they ask for injunctive relief to force Defendants to take specific action to prevent future inundations and avoid Plaintiffs' being displaced again and enduring more expensive home repairs.

In the alternative to the continuing violation doctrine, Plaintiffs, viewing the complaint in the light most favorable to Plaintiffs, contend that the allegations of the Complaint show that Plaintiffs' § 1983 claim did not accrue until either December 2014 or the flood event in 2015. "[A] plaintiff's awareness [of his

injury] encompasses two elements: (1) the existence of the injury; and (2) causation, the connection between the injury and the defendant's actions." *Piotrowski v. City of Houston* ("*Piotrowski I*"), 51 F.3d 512, 516 (5th Cir. 1995). Defendants pronounce the 2009 flood as "unprecedented" (#5 at p. 9), but then claim it should represent the date of accrual: they cannot have it both ways. They argue that it was not until the 2015 flood that Plaintiffs could have reasonably been expected to understand that the flooding was not an "unprecedented" act of God, but a repetitive man-made event caused by Defendants' ongoing actions within TIRZ 17. About the same time they reasonably expected Defendants would expend funds to give them relief, as they actively advocated before City Council and the TIRZ Board.

Plaintiffs insist that TIRZ is not merely a geographic area of Houston, but also a suable entity according the City's Ordinance and also a suable alter ego of the Authority. Under Chapter 311 of the Texas Tax Code, the municipal ordinance creating a TIRZ must describe its borders, establish a board of directors, create an expiration date for the zone, include required legislative findings regrading investment zone criteria, and create a tax increment fund. Tex. Tax Code § 311.004(a)(1)-(7). City Ordinance 1999-759 creating TIRZ 17 followed. #7-1. Subsequently the City approved TIRZ's first project plan and financing plan. #7-3, Ordinance 1999-852.

The City created a seven-member Board to administer the TIRZ, making the TIRZ, itself, a decision-making body separate and apart from the City and able to hold meetings, deliberate, and take votes.

#7-1, Ordinance 1999-759 (functions of the Board).  The Ordinance authorizes the TIRZ's Board "to exercise **all of the City's powers** necessary to administer, manage, or operate the Zone . . . ," in other words, the City delegated the maximum authority permitted by state law, with a separate legal existence from the City, making it an entity that can sue and be sued.  #7-1 at p.8 (emphasis added); Tex. Tax Code § 311.010(a).  The 2003 Tri-Party agreement among the City, the Authority and the TIRZ 17 shows that the TIRZ was considered separate from the other two, but with equal powers to contract.   The City Charter art. II, § 1 (#7 at p. 13) states that the "City of Houston, made a body politic and corporate by this Act, . . . may sue and be sued, . . . implead and be impleaded in all courts and places and in all matters whatsoever . . . ," while Texas Local Government Code § 51.075 states, "The municipality may plead and be impleaded in any court."  The Texas Tax Code § 311.008 lists the powers that the City did reserve to itself, including power to approve project plans, acquire property to implement project plans, make agreements with bondholders, acquire or construct public works to implement project plans, etc.  There are no express statements anywhere reserving the power to sue and be sued just to the City, however.

As for the alternative theory that TIRZ 17 is the alter ego of the Authority and thus a suable entity, as noted *supra*, the two share the same Board members and "function in parallel as a single decision-making body."  #1 ¶¶49-50.

As for the RAF's having associational standing, the Supreme Court held in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. at 343, that an association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members. *In accord, Friends of the Earth*, 129 F.3d at 827-28. As noted, the first two elements are constitutional requirements, while the third is "solely prudential." *Ass'n of Am. Physicians & Surgeons*, 627 F.3d at 550. Defendants have charged that Plaintiffs fail to satisfy the first and the third elements. For the first, Plaintiffs have pleaded that Plaintiffs Virginia Gregory and Lois Morris (and later non-plaintiff Roger Grindell) are RAF members and supporters who have been injured by the flooding, and Defendants have not challenged that assertion. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555, 558 (1996)(first element satisfies Article III constitutional requirement when the association "include[s] at least one member with standing to present, in his or her own right, the claim."); *N.Y. State Club A'ssn, Inc. v. City of New York*, 487 U.S. 1, 9 (1988)("[T]he purpose of the first part of the *Hunt* test is simply to weed out plaintiffs who try to bring cases, which could not otherwise be brought, by manufacturing allegations of standing that lack any real foundation."). Plaintiffs argue that there is no doctrine or

authority, and Defendants fail to cite one, that an association must have members separate from members listed as plaintiffs. The RAF has named Gregory, Morris, and Grindell, and represents that it has similar additional members that could sue for purposes of the first element. In fact, Plaintiffs filed their Amended Complaint naming non-plaintiff Roger Grindell as the third RAF member (#14, ¶178), in the event that the Court requires one. The third, prudential element "focuses . . . on 'matters of administrative convenience and efficiency.'" *Ass'n of Am. Physicians & Surgeons*, 627 F.3d at 551, *citing Brown Group*, 517 U.S. at 557. Courts evaluate this element by looking at both the relief requested and the claims asserted. *Id.* When the plaintiffs seek damages, it is more difficult for an association to sue on behalf of its members; where the claim asserted requires the participation of members individually, rather than as an association," such as when the amount of damages varies from one individual to another, the association should not sue on behalf of its members. *United Food*, 517 U.S. at 558; *Tex. Assoc. of Bus. v. Tex. Air Ctrl. Bd.*, 852 S.W. 2d 440, 447 (Tex. 1993).

In the case *sub judice,* Plaintiffs do not seek damages so the prudential concern of judicial efficiency is not involved. "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of an association actually injured. Indeed, in all the cases in which the Fifth Circuit has expressly recognized standing in associations to represent their members, the relief sought has

been of this kind ["declaration, injunction, or some form of prospective relief"] and "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. at 515. Plaintiffs maintain that judicial efficiency in this suit is attained by having the RAF sue on behalf of its members, rather than having a case with a hundred or more member plaintiffs seeking the same relief. Indeed, since the third prong is only prudential, a court can abrogate the requirement.

Although maintaining that its original complaint satisfies all pleading requirements, "in an abundance of caution" if the Court finds it so requires, Plaintiffs request leave to file a more definite statement.

### The Zone and the Authority's Reply (#16)

The Zone and the Authority highlight the fact that in their Amended Complaint, Plaintiffs concede that the drainage policy which they first challenged has since been replaced and that the new policy includes the construction of the drainage and infrastructure that Plaintiffs originally sought. On August 30, 2016 in Ordinance No. 2016-645 the City Council approved, adopted, and funded for the 2017 operating budget and for the 2017 CIP the following capital improvements that were recommended in the 2014 Amendment to the LAN Regional Drainage Study and that Plaintiffs had sought to have implemented: (1) two W-140 Channel improvements intended to "reduce street ponding and flooding in the surrounding areas"; (2) construction of box culverts along Memorial Drive and North Gessner

to improve drainage and mobility and to provide additional detention; and (3) construction of two additional detention basins to mitigate flooding in surrounding residential and commercial areas. Thus their section 1983 claim for injunctive relief has been mooted by implementation of the new policy.

"[I]f the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2012). Plaintiffs' abstract concerns that Defendants will not implement the new policy do not present an issue that is ripe for adjudication. *Monks v. Houston*, 340 F.3d 279, 282 (5th Cir. 2003)("A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."), *citing New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987); *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008). Even if the Court did not previously consider the nonjusticiable nature of Plaintiffs' claims, it should do so now for other reasons. Plaintiffs reiterate that the Zone is not a suable entity. State law determines the capacity of a governmental entity to sue or be sued in federal court. *Skyway Towers LLC v. City of San Antonio*, No. 5:14-CA-410-DAE, 2014 WL 3512837, at *4 (W.D. Tex. July 14, 2014), *citing* Fed. R. Civ. P. 17(b); 6A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d* § 1562 (2d ed. 1990). Texas law allows a city "to designate whether one of its own subdivisions can be sued as an independent entity." *Id., citing Darby*, 939 F.2d at 313. For

example, the Zone is not suable because the City has not explicitly granted the Zone the ability to sue or be sued. *See Darby*, 939 F. 2d at 313 ("[O]ur cases uniformly show that unless the true political entity [here, the home rule city] has taken explicit steps to grant to the servient agency jural authority, the agency cannot engage in any litigation except in concert with the government itself."); *in accord Thomas-Melton v. Dallas County Sheriff's Dept.*, 39 F.3d 320 (Table), No. 94-10049, 1994 WL 612546, at *2 (5th Cir. 1994). The subdivision must have "a separate legal existence," i.e., it must be a "separate and distinct corporate entity" apart from the city. *Skyway Towers LLC v. City of San Antonio*, No. 5:14-CA-410-DAE, 2014 WL 3512837, at *5 (W.D. Tex. July 14, 2014). This requirement is not met by a general grant of "all powers." *Id.* If the subdivision does not have such jural authority, it cannot be sued with the city that created it. *Id.* Furthermore the Zone and the Authority maintain that no authority supports Plaintiffs' claim that jural authority can be imputed by means of an alter ego theory, and the Court has been unable to find any.

Next the Zone and the Authority assert that Plaintiffs' § 1983 claims are barred by limitations despite the fact that their alleged injuries are continuing. Plaintiffs claimed that their flooding was caused by the first policy they challenged and that they had "vocally and repeatedly" complained to City Council as early as 2007, 2011, and 2012, more than two years before they filed their suit. Thus the continuing violation theory does not apply here because they admit they were aware of the discrete acts that gave

rise to their claims nine years before they filed suit.  They also admit that they complained about a single discrete policy that resulted in lingering flooding.

The Zone and the Authority argue that the § 1983 claims are implausible because Defendants' conduct is **not** the "moving force" behind any alleged violations of Plaintiffs' constitutional rights because the "final policies" about which they complain are made, and can only be made, by the City Council.  *Meyers v. La Porte Indep. School District*, 277 Fed. Appx. 333, 335 (5th Cir. Dec. 20, 2887)

To meet the "irreducible constitutional minimum" of standing, i.e., the "case or controversy" requirement of Article III, a plaintiff must demonstrate he has experienced an "injury in fact" that is "fairly traceable" to the defendant's actions and that will probably be remedied by a favorable decision.  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  The  United States Supreme Court defines "injury in fact" as "a concrete and particularized, actual or imminent invasion of a legally protected interest" that is "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Next ''there must be a causal connection between the injury and the conduct complained of- the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.''"  *Id.* Last it must be probable, not simply speculative, that a favorable decision will remedy the injury.  *Id.* at 561.

"[T]o qualify as a case for federal court adjudication, a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed." *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Engineers*, 217 F.3d 393, 396 (5th Cir. 2000). Regarding Article III, a claim becomes moot, in other words there is no longer a "case" or a "controversy," if the issues it raises are no longer live or if the plaintiff lacks a legally cognizable interest in the outcome. *Already, LLC v. Nike, Inc.,* 133 S. Ct. 721, 726 (2013), *aff'd*, 133 S. Ct. 721 (2013)("[A]n 'actual contrast' must exist not only 'at the time the complaint was filed,' but through 'all stages' of the litigation."); *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)("If the controversy between [the parties] has been 'resolved to the point that they no longer qualify as 'adverse parties with sufficient legal interests to maintain the litigation,' we are without power to entertain the case."). Furthermore when the government defendant voluntarily eliminates a practice challenged as illegal, "courts are justified in treating a voluntary governmental cessation of possible wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a  public entity." *Allied Home Mortg. Corp. v. United States HUD*, 618 Fed. Appx. 781, 786 (5th Cir. 2015).  The reason is that government actors, in the exercise of their official duties, "are accorded a presumption of good faith because they are public servants, not self-interested private parties." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011).  Thus the Court should

find Plaintiffs' claims are moot and should dismiss them due to a lack of an Article III case or controversy. *Id.*

The Zone and the Authority additionally assert that Plaintiffs have not stated plausible substantive due process or due course of law claims. Plaintiffs' pleading of a possible arbitrary basis for Defendants' actions is not what the law requires. The proper test for substantive due process is the deferential "rational basis" test: is the Defendant government's action rationally related to a legitimate governmental interest? *FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). Whether a rational relation exists is a question of law for the court. *Simi*, 236 F.3d at 249.

Defendants repeat that not only has the Fifth Circuit not adopted the state-created-danger theory, but that theory applies only where the alleged harm has been caused by a third party. *Kinsie v. Dallas County Hosp. Dist.*, 106 Fed. Appx. 192, 195 (5th Cir. 2003)(*per curiam*), *citing Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997); *Piotrowski II*, 237 F.3d at 583, 585; *Johnson v. Dallas I.S.D.*, 38 F.3d at 201. There is no third party involved here: Plaintiffs complain only that they are the "victims of Defendants' actions."

The Zone and the Authority repeat that a Fourth Amendment seizure claim requires a willful and intentional seizure, not just evidence of an intentional policy, contrary to Plaintiffs' erroneous argument in their response that the intent element does not entail intentional seizure, but only an allegation of an intentional

policy.  The Supreme Court in *Brower v. City of Inyo*, 489 U.S. 593,
596 (1989), opined that a "[v]iolation of the Fourteenth Amendment
requires an intentional acquisition of physical control," i.e., "the
detention or taking itself must be willful.  This is implicit in the
word 'seizure.' which can hardly be applied to an unknowing act."
*Id., citing Laughlin v. Olszewski*, 102 F. 3d 190, 193 (5th Cir.
1996)(same and finding no seizure where the "interference with
[plaintiff's] possessory interest in his property was a wholly
unintentional consequence of [defendant's] otherwise lawful act.").
The adoption of all government policy is intentional.

Finally they reiterate that Plaintiffs' request for declaratory
and injunctive relief is improper because Plaintiffs ask to have
this Court take over the policymaking, budgeting, and implementation
decisions of elected officials, i.e., the Houston City Council.
Moreover, the new policy replacement containing the drainage and
infrastructure projects that Plaintiffs had been seeking, renders
Plaintiffs' complaints moot and forecloses such relief.

**City's Reply (#17) to Plaintiffs' Consolidated Response (#11) and**
**Motion to Dismiss First Amended Complaint (#14)**

The City asks the Court to dismiss the First Amended Complaint
under Rules 12(b)(1) and 12(b)(6) for the same reasons as it stated
in its original motion to dismiss (#5) Plaintiffs' previous
complaint.  Reiterating the Zone and the Authority's argument that
now the 2017 CIP and budget, memorialized in City Ordinances, have
mooted Plaintiffs' original claims and that Plaintiffs no longer
have an actual case and controversy, so their claims are no longer

justiciable, the City further points out that Plaintiffs cannot raise the "capable of repetition but evading review" exception to the mootness doctrine.  When the defendant is a governmental entity, it is accorded the presumption of good faith for deciding whether policy changes render a lawsuit against the government moot. *Sossamon*, 560 F.3d at 325.  For the doctrine to apply, there must be exceptional circumstances in which (1) the challenged action is too short in duration to be fully litigated prior to the cessation of expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Bayou Liberty Ass'n*, 217 F.3d at 398, *quoting Spence v. Kemna*, 523 U.S. 1, 17 (1998).  The City observes that even though Plaintiffs' situation is capable of repetition but evading review, the circumstances are not sufficient to entitle Plaintiffs to vent their grievances in a federal judicial forum or revive their dispute, which became moot before the next action can commence.  *Friends of the Earth*, 528 U.S. at 189 ("[T]he mootness exception for disputes capable of repetition yet evading review . . . will not revive a dispute which became moot before the action commenced."), *citing Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998), and *quoting Renne v. Geary*, 501 U.S. 312, 320 (1991)). Plaintiffs' injuries for which they seek injunctive relief are being redressed and their complaints about construction of drainage improvement projects are currently underway.  They are in no immediate danger of sustaining direct injury as the result of the challenged official conduct.  Thus Plaintiffs' First Amended

Complaint fails to state a claim for injunctive or declaratory relief.

The City identifies eight issues to be ruled upon by the Court:

1. Do Plaintiffs lack standing because their claims are moot?

2. Does the Court have jurisdiction over Plaintiffs' claims that are not yet ripe?

3. Does the City have immunity from suit and from liability for claims arising from its implementation of infrastructure and drainage projects, its regulation of commercial projects, and its regulation of commercial development?

4. Have Plaintiffs alleged facts that would constitute official policy or custom to give rise to a Section 1983 claim?

5. Have the Plaintiffs alleged facts that would constitute violations of any federally protected constitutional rights?

6. Do the associational standing claims brought by the RAF pass muster?

7. Are Plaintiffs' claims time barred?

8. Are Plaintiffs entitled to injunctive relief?

The City repeats a number of previous arguments and asserts a few new ones. First, it reiterates that the City has absolute immunity from any claims based on its performance of governmental functions designed to address flooding problems, which are "enjoined

on a municipality by law and are given to it as part of the state's sovereignty," and which expressly include "street construction and design," "sanitary and storm sewers," "building codes and inspection," "zoning, planning and plat approval," and "engineering functions." *City of Friendswood*, 489 S.W. 3d at 523; Tex. Civ. Prac. & Rem. Code § 101.0215. Governmental functions also include "community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code." *Id.*, *citing* Tex. Loc. Gov't Code §§ 373.001, *et seq.,* 374.001, *et seq.* All of the conduct of which Plaintiffs complain is the exercise of governmental functions, "repackaged" as tort claims alleged in the First Amended Complaint[29] (#17 at p. 25) and immune from liability and suit: "Defendants widened and lowered Bunker Hill Road . . . and replaced storm sewers"; Defendants "rebuilt the Bunker Hill bridge"; Defendant TIRZ 17 "approved construction of a 42-inch storm drain"; Defendants "made changes to the road and storm sewers along South Gessner Drive"; Houston "approved construction of a shopping center"; and Defendants

---

[29]    The Court agrees with Defendants that "the government may not be sued in tort unless a separate, viable tort fits within the limited waiver provided by the [Texas Tort Claims] Act." *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 736 (S.D. Tex. 2010). The Texas Tort Claims Act does not include a waiver for "legislative functions of a government unit" and/or the City's discretionary powers. Tex. Civ. Prac. & Rem. Code §§ 101.052 and 101.056. Nor has the City "waived its immunity by consenting to suit in federal court in the Texas Tort Claims Act for § 1983 claims." *Bishop v. City of Galveston, Tex.*, no. H-11-4152, 2013 WL 960531, at *9 (S.D. Tex. Mar. 12, 2013), *citing Quern v. Jordan*, 440 U.S. 332, 340-45 (1979). Plaintiffs try to shoehorn their claims into the category of § 1983 claims, but fail to plead facts to meet the required elements of a § 1983 claim under either the Fourth or Fourteenth Amendments.

approved of a "reimbursement contract" for a developer's water detention facility.  #14, ¶ 85, 87, 90, 92, 105 and 134-37.

Plaintiffs cannot circumvent the City's governmental immunity from suit by labeling their tort allegations as a declaratory judgment claim. *Burkett v. City of Haltom City*, No 4:14-CV-1041-A, 2015 WL 3988099, at *4 (N.D. Tex. June 30, 2015)(plaintiff cannot avoid dismissal by drafting her claims as a request for declaratory judgment). Without a clear and unambiguous waiver of government immunity by the legislature, a declaratory judgment is usually moot where "the question presented for decisions seeks a judgment upon a matter which, even if the sought judgement were granted, could not have any practical effect upon the parties." *Ferreira v. Dubois*, 963 F. Supp. 1244, 1262 (D. Mass. 1996), *quoting Perez v. Sec'y of Health, Educ., & Welfare*, 354 F. Supp. 1342, 1346 (D.P.R. 1972). The Federal Declaratory Judgment Act ("FDJA") permits a federal court to issue a declaratory judgment where there is "an actual controversy within its jurisdiction within the meaning of Article III"--the issues are "live" or the parties have a "legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Plaintiffs' factual allegations do not show a substantial and continuing controversy between Plaintiffs and the City, i.e., that the plaintiff "'has sustained or is immediately in danger of sustaining some direct injury; as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"

*Lyons.* 461 U.S. at 101-02. Plaintiff have not alleged any facts to support this element of declaratory relief.

Courts also have no jurisdiction to take over the discretionary functions of the other two branches of government. In *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 128-29 (1992), the United States Supreme Court opined,

> Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, . . . involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.

Furthermore, Defendants are immune from the specific injunctive relief requested, i.e., having the judicial branch act outside its prescribed role to become Houston's zoning authority, deciding which commercial permits the City should issue, and prioritizing flood relief projects near Plaintiffs' properties. In addition, the injunctive relief requested is overly broad, not "narrowly tailored to remedy the specific action necessitating the injunction." *Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006).

Plaintiffs fail to state a claim under § 1983, the Fourteenth and/or Fourth Amendments to the United States Constitution, and Article 1, Section 19 of the Texas Constitution. They fail to plead facts demonstrating that the City "acted pursuant to a specific official policy, which was promulgated or ratified by a legally authorized policymaker. *Groden v. City of Dallas, Texas*, 826 F.3d 280, 282 (5th Cir. 2016). The fact pattern presented in the Amended Complaint is, at best, a few steps short of "fairly typical state

law tort" claims that do not rise to the level of substantive due process violations. *Kinzie*, 106 Fed. Appx. at 193, *quoting Collins*, 503 U.S. at 128 ("The Supreme Court has 'rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state law.'").

Plaintiffs' stated claims are not constitutional violations flowing from government policy, but simply a litany of conclusory complaints about drainage projects, which they argue are linked to subsequent flooding of unspecified property, and which gloss over the required elements of their substantive due process and Fourth Amendment claims. In essence they are repackaged tort claims against the City lacking the key elements of causation and intent. *Collins*, 503 U.S. at 128; *Laughlin v. Olszewski*, 102 F. 3d at 193 (*citing Brower*, 489 U.S. at 596)(a seizure under the Fourth Amendment requires an intentional acquisition of physical control). There are no facts alleged to support their claim of substantive deprivation of their constitutional rights.

Plaintiffs fail to identify any City policy promulgated or ratified by any City policymaker. They do not allege facts to establish a custom, policy practice of the City that was the moving force behind the alleged constitutional violations. They do not allege facts demonstrating that any of them were deprived of a right secured by the Constitution and federal laws as the result of any alleged acts or omissions by the City. Thus Plaintiffs cannot survive the City's motion to dismiss.

Nor have they pleaded facts stating a claim for violations of the 14th and 4th Amendments to the United States Constitution, but only conclusory allegations.  For the due process claim, Plaintiffs must satisfy two requirements:  (1) do Plaintiffs have a protected property interest, and if so, (2) did they receive all the process that was due them?  *Walls v. Cent. Contra Costa Transit Auth.,* 953 F.3d 963, 967-68 (9th Cir. 2011).   The City complains that Plaintiffs make vague, general allegations of violations of their rights under the Fourth and Fourteenth Amendments, as well as under the Texas Constitution's "due course of law" clause, Article I, Section 19.   In addition they fail to allege causal link between their complaints and the government "abusing its power," such as by "acting arbitrarily" without a "rational basis."  #14, at 30-31, ¶¶ 188-96.

Pleading in generalities and speculating about possible future harm, Plaintiffs fail to describe specific examples of "failing to build flood protection," or "failing to require mitigation (such as detention)" or "sending floodwaters into [Plaintiffs' homes]." Conclusory allegations and speculation will not defeat a motion to dismiss under Rule 12(b)(6).   *Twombly*, 550 U.S. at 555.   In analyzing a substantive due process claim, the sole question is whether a rational relationship exists between the policy and a conceivable legitimate objective.  If the question is in the least debatable, there is no substantive due process violation.  *Simi Investment*, 236 F.3d at 250-51.

Nor do Plaintiffs' allegations satisfy the elements required to maintain a state-created-danger theory, a subset of the substantive due process violation: "(1) a plaintiff must show that the state actors increased the danger to plaintiff; and (2) a plaintiff must show that the state actors acted with deliberate indifference." *Piotrowski I*, 51 F.3d at 515. To state a claim for deliberate indifference, "[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and . . . they must have used their authority to create an opportunity that would otherwise not have existed for the third party's crime to occur." *Johnson*, 38 F.3d at 201. "The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in 'affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.'" *Id.*

The City also points out that a plaintiff is not entitled to governmental protection from non-state, third-party actors under this theory under the facts here. *Randolph*, 130 F.3d at 730 ("The Due Process Clause of the Fourteenth Amendment confers upon an individual the right to be free of state-occasioned damage to her bodily integrity, not entitlement to government protection from injuries caused by non-state actors. Thus, as a general rule, 'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause'"), *citing DeShaney v Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196-97 (1989). States do not create a special danger by

facilitating expansion and beautification of detention ponds. Plaintiffs fail to support with facts their broad allegation that the City "created a dangerous environment of residential neighborhoods adjacent to TIRZ 17." They have not shown a causal link between a City policy or custom and their alleged damage caused by increased flooding.

Nor do Plaintiffs state facts sufficient to assert a Fourth Amendment claim, the elements of which are "(a) a meaningful interference with [plaintiffs'] possessory interests in [their] property, which is (b) unreasonable because the interference is unjustified by state law or, if justified, then uncompensated." *Severance*, 464 F.3d at 487-88; U.S. Const. amend. IV. Road improvements near their homes are insufficient to state a claim for interference with Plaintiffs' possessory interests, nor do drainage improvements for apartment residents in the vicinity of Plaintiffs' homes, nor does private development of a grocery store or the design of a retention pond in other neighborhoods. Because Plaintiffs fail to allege a factual basis for the City's causing any violation of Plaintiffs' constitutional rights under the Fourth and Fifteenth Amendments, these claims should be dismissed.

The same is true of their claims for violations of Article I, Section 19 of the Texas Constitution. Plaintiffs did not make any independent separate allegations of deprivations of property rights relating to the Texas Constitution, but only conclusory statements of some of the elements. #14 at 32-33, ¶¶ 202-09. There are no facts alleged demonstrating that the municipal government's drainage

and mobility conduct was not rationally related to furthering the City's legitimate interest.

Plaintiffs' First Amended Complaint's vague generalities about the RAF's members and the locations of their homes (#14 at 5, ¶¶30-34) still show they lack standing and the RAF lacks associational standing. The RAF does not claim any harm to any property it owns but asserts it "is suing on behalf of its members and supporters." #14 at 5, ¶29.

The RAF also fails to provide details to show the third element of associational standing, "neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members." *Friends of the Earth*, 129 F.3d at 827-88 & n.5 (citing *Hunt*, 432 U.S. at 343) (association must demonstrate that the individuals it seeks to represent possess sufficient "indicia of membership"). *Hunt* established the following test: "an association has standing to sue on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of each individual members in the lawsuit." *Hunt*, 432 U.S. at 343; *see also Warth*, 422 U.S. at 511 ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members. . . . The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a

justiciable case had the members themselves brought the suit. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction."); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W. 2d 440, 447 (Tex. 1993)(Texas Supreme Court adopts the test for associational standing in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. at 343: "an association has standing to sue on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). Moreover, the *Hunt* court, *id.*, highlighted the nature of the remedy that could be sought by an association with standing to sue on behalf of its members, described by the Supreme Court in *Warth v. Seldin*, 422 U.S. at 515:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

The City charges that RAF 's claims of associational standing fail because it does not allege the third element of the *Hunt* test, but instead states that its "members, board members and supporters reside in and own property throughout the Memorial City Area, including the Spring Branch north-side neighborhoods, and the south-side neighborhoods including Fonn Villas, Long Meadows, Memorial Pines, and Frostwood." #14 at 27-28, ¶178. The City observes, citing authority, that because specific property rights are at issue here, more is required to satisfy the third element of the *Hunt* test for associational standing.

To show that a plaintiff has Article III standing requirements. a plaintiff must show that (1) he has suffered an "injury in fact" that is (a) concrete and particularized, and (b) is actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In a lawsuit to force compliance, the plaintiff bears the burden to establish standing to demonstrate that, if unchecked by litigation, the defendant's alleged wrongful behavior will likely occur or continue, and that the 'threatened injury [to the plaintiff is] certainly impending.'" *Friends of the Earth*. 528 U.S. at 107, *quoting Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

The City insists that Plaintiffs are not entitled to injunctive relief because they fail to allege facts supporting the essential

elements for it.  To warrant a permanent injunction, a plaintiff

must show "(1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that, considering the balance of

hardships between the plaintiff and defendant, a remedy in equity

is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *eBay v. MercExchange, LLC*,

547 U.S. 388, 391 (2006).  "[F]or an injunction to issue based on

a past violation, [plaintiff] must establish that there is a 'real

or immediate threat that he will be wronged again,'" *Hainz*, 207

F.3d 795, 802 (5th Cir. 2000).  Here Plaintiffs have failed to

allege facts to show any real or immediate threat of flooding.

Instead they speculate and hypothesize their properties will flood,

but fail to plead facts to show there is a real and immediate danger

of flooding or that the relief they seek will prevent future

flooding.  Instead they allege that they "live in a constant state

of anxiety each and every time it rains," and "fear traveling too

far from their homes just so they can rush home if heavy rain

comes."  #14 at 30, ¶185.  "Speculative injury is not sufficient;

there must be more than an unfounded fear on the part of the

applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d

992, 997 (5th Cir. 1985).  In addition Plaintiffs fail to show that

the threat of injury to them is outweighed by the potential injury

to Houston from an injunction. *Guy Carpenter*, 334 F.3d at 464.

Furthermore, Plaintiffs' request for judicial oversight of municipal

functions is not in the public's interest when done with only

Plaintiffs' interest in mind (or by prioritizing the interests of one or more landowners) over municipal policy set for the City as a whole and when it would usurp the City's discretion in fiscal and administrative oversight in approving construction of public improvements.

## Plaintiffs' Sur-Reply (#19)

In response to Defendants' newly raised issues of mootness and ripeness, Plaintiffs insist that their claims are not moot and the issue of ripeness, "a disguised way to shift the burden of the mootness inquiry onto Plaintiffs," is not actually before the Court. Plaintiffs argue that the CIP has not mooted this case because it is merely a plan for appropriation without legal force. The City admits that CIPs can be, and often are, revised. Plaintiffs' claims survive because the new projects on the CIP represent an incomplete list. Furthermore no "policy" has changed because, as even Defendants have asserted, there is no "policy" at issue. The CIP was proposed by "decision" of TIRZ 17 and approved by an "ordinance" of City Council as the basis of the Section 1983 liability. "Where the defendant[s'] voluntary cessation of allegedly illegal conduct is claimed to moot a case," Defendants here bear, but cannot meet, the "heavy burden" to "demonstrate not only that the conflict giving rise to the claim is not ongoing, but also that the effects of any illegality have been completely and irrevocably eradicated." *Del A. v. Roemer*, 777 F. Supp. 1297, 1322 (E.D. La. 1991), *citing County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)("We recognize

that, as a general rule, 'voluntary cessation[30] of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot' '[b]ut jurisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that 'there is no reasonable expectation that the alleged violation will recur . . . and (2)

---

[30] This Court notes that the "voluntary cessation" exception to mootness applies where the defendant voluntarily ceases the challenged practice and thereby moots the plaintiff's case. *American Civil Liberties Union of Massachusetts v. United States Conference of Catholic Bishops*,705 F.3d 44, 545 (1st Cir. 2013). As explained in *American Civil Liberties,* id. (citations omitted,

> The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." This is to avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and reinstating it immediately after. As the Supreme Court stated last term, "such . . . maneuvers designed to insulate a decision from review . . . must be viewed with a critical eye," and, as a result, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot." However, even in circumstances where the voluntary cessation exception applies, a case may still be found moot if the defendant meets "the formidable burden" of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

*In accord, Sossamon*, 560 F.3d at 324-25. To invoke the voluntary cessation exception, the Fifth Circuit requires that there must be a reasonable expectation that the challenged conduct will be repeated following dismissal of the case. *American Civil Liberties*, 705 F.3d at 56. If the court justifiably finds the exception applies and "moots the case that might have been allowed to go forward if the defendant had not been a public entity, government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self interested private parties. Without evidence to the contrary, we assume that formally announced changes to official government policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325.

interim relief or events have completely and irrevocably eradicated the effects of the alleged violations.  When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.'"

For ripeness, the Court applies the same inquiry as that before the CIP passed:  do the Plaintiffs have sufficient injury to make the dispute with the Defendants concrete?  *Contender Farms, LLP v. U.S. Dept. of Agriculture*, 779 F.3d 258, 267 (5th Cir. 2015). Plaintiffs argue that they still have injuries of property losses due to Defendants' past decisions and ordinances, injuries that are ripe for adjudication.

Plaintiffs highlight the fact that "it became City policy to engage in a continuous process that includes annual review, revision and adoption of a five-year Capital Improvement Plan: http://www.houstontx.gov/cip/17cipadopt/intofuction.pdf. #17 at 12. The 2017-2021 CIP states that the five-year CIP is "revised annually to include new projects, reflect changes in priorities and extend the plan an additional year. . . . The plan is adjusted throughout the year as needs dictate or when changes are made to existing approved projects."[31]  Thus CIPs are easily changeable.  They are also not legally binding on the City or on the entities to which funds are appropriate; they represent potential appropriation of money for a particular project, which may or may not  be realized for a variety of reasons.  Projects in CIPs may be altered, removed

---

[31] http://www.houstontx/goc/cip/17cipadopt/introduction.pdf.

or added in a subsequent CIP. For example the 2014-2018 CIP, approved by Defendants on October 23, 2013, contained "the W140 channel improvements" project indicating completion of construction by 2016. #14 at 104, 128 (showing project no. T1734); #128 (showing $7 million budget for construction between 2015-2016). It never came to pass. The W140 Channel Improvements are now pushed back to 2017-2018.

Plaintiffs contend no "policy" has changed. Plaintiffs base their § 1983 claims on Defendants' deliberate "decisions" and "ordinances." The CIP is not a "policy," but a series of proposed projects based on a "decision" by TIRZ 17. TIRZ 17 proposes a CIP and presents it to the City Council, which approves the CIP in an ordinance. The City decision is not a policy, but an "ordinance." Since Defendants previously argued that Plaintiff did not allege a "policy" (#5 at 3, 14; #7 at 2, 15), it cannot now assert that they do have one that has "changed."

Furthermore, under *Monell* and progeny, a policy becomes significant when a City employee engages in illegal conduct because "the unconstitutional conduct [of an employee] must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski II*, 237 F.3d at 578. A policy helps "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id.* In § 1983 courts must find a policy by a final decision maker or the final decision maker cannot be liable for acts of the subordinate or employee. Here, on

the other hand, the case is about a series of "decisions" or "ordinances" by TIRZ 17, the Authority, and City Council, which are all final decision makers for the projects that moved floodwaters out of the commercial TIRZ area and into the residential neighborhoods. *Monell*, 436 U.S. at 690; Pembaur, 475 U.S. at 480. Therefore the passage of a new CIP does not represent a policy change and cannot moot the case. Defendants' constant use of the word "policy" must be construed cautiously. In *Monell* it is used to require a policy, while Defendants use it as a rhetorical flourish that is not related to the facts of the case. Thus the passage of the new CIP does not constitute a policy change and cannot "moot" the case.

None of the projects promised in the Tri-Party Contract in 2003 to provide regional drainage solutions to the residential neighborhoods was ever implemented. Meanwhile other opportunities for land acquisition for purposes of detention were lost as the land was acquired for other uses. Plaintiffs argue that Defendants cannot reasonably be expected to be given a presumption of good faith as their unfulfilled promises piled up and their actions were not those of a public servant, but of self-interested private parties.

Plaintiffs describe Defendants' assertion that "Plaintiffs are in no immediate danger of sustaining direct injury" now that the CIP has been approved as "almost farcical, as each rain event is a threat to the Plaintiffs and the promised projects continue to change or be deferred." Even if the projects on the latest CIP are

implemented, the new CIP does not cover all the relief they have requested or all the relief needed to remedy the constitutional violations. For example, if some projects listed in the LAN Regional Drainage Study are part of the solution, not enough development has occurred to determine if the LAN projects alone will remedy the problems.

## Court's Decision

The Court addresses the claims against each Defendant. Where the same claim is brought against all Defendants and applies the same way to all Defendants with the same result, the Court so states with respect to the first Defendant to avoid redundancy.

**The City**

The Court dismisses the state-created-danger claims against all three Defendants. Rule 12(b)(6) requires dismissal whenever a plaintiff's claim is based on an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)(mentioning as an example of a "meritless legal theory" "claims against which it is clear that defendants are immune from suit"). For years the Fifth Circuit has clearly stated that it has not recognized a state-created danger claim. *See Lefall v. Dallas I.S.D.*, 28 F.3d 521 (5th Cir. 1994)("We have found no cases in our circuit permitting § 1983 recovery for a substantive due process violation predicated on a state-created danger theory."; *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 and n.5 (5th Cir. 2003); *Piotrowski II*, 237 F.3d at 584 (noting that the Fifth Circuit has never adopted the state-created danger theory). It has very recently reaffirmed that stance. *Paraza v.*

*Sessions*, ___ Fed. Appx. ___, 2017 WL 1013070, at *1 (March 14, 2017 ("We have 'never explicitly adopted the state-created danger theory.' As such, Mayen Paraza has failed to allege a valid constitutional challenge to his removal order."), *quoting Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012). This Court refuses to do the contrary. Accordingly, the Court dismisses state-created danger claims under § 1983 against all three Defendants under Rule 12(b)(6) for failure to state a legally cognizable claim for relief under Texas law.

Moreover, even if the Court did find the claim cognizable under Texas and Fifth Circuit law, Defendants have pointed out how the facts here fail to support the elements of a state-created danger theory.

"When a plaintiff seeks a remedy for constitutional violations against municipalities or government actors, the 'proper vehicle for these allegations is [42 U.S.C.] § 1983,'" and not a claim arising "directly under the Constitution." *Hearth Inc. v. Dep't Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994); *Mitchell v. City of Houston, Tex.*, 57 Fed. Appx. 211 (5th Cir. 2003)("When a statutory mechanism is available, 42 U.S.C. § 1983 being a prime example, plaintiffs must invoke its protection."). Plaintiffs have brought their takings claims under § 1983.

As discussed, Plaintiffs fail to plead a takings claim under the Fifth Amendment[32] against any of the Defendants.  There are two types of "takings" under the Fifth Amendment: (1) a direct, physical appropriation of property, real or personal, which is the "perhaps the most serious form of invasion of an owner's property interests, depriving the owner of the rights to possess, use and dispose of the property"; and (2) a "regulatory taking," i.e., a restriction on the use of property that went "too far."  *Horne v. Department of Agriculture*, 135 S. Ct. 2419, 2427 (2015), *citing Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922)(Holmes, J.).  The instant complaint falls into the second category.  To determine how far is "too far" requires the court to make an "'ad hoc' factual inquiry," which includes consideration of "factors such as economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action."  *Id., citing Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).  "The first category of cases requires courts to apply a clear rule; the second necessarily entails complex factual assessments of the purposes and economic effects of governmental actions.'"  *Id.* at 323, *quoting Yee v. Escondido*, 503 U.S. 519, 523 (1992).  "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner . . . regardless of whether the

---

[32] The Takings Clause, which applies to the states through the Fourteenth Amendment, states that "private property [shall not] be taken for public use, without just compensation."  *Samaad v. City of Dallas*, 940 F.2d 925 (5th Cir. 1991), *citing* U.S. Const. amend. V and *Chicago B & Q.R.R.*, 166 U.S. 226 (1987).

interest that is taken constitutes an entire parcel or merely a part thereof." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302. 322 (2002), *citing U.S. v. Pewee Coal Co.*, 341 U.S. 114, 115 (1951). Thus where a regulation restricts the use but does not completely deprive an owner of property rights, there may not be a taking, in which case the regulation did not go "too far." The Supreme Court has long proclaimed that "'where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking.'" *Id., quoting Andrus v. Allard*, 444 U.S. 51, 65-66 (1979).[33] Once there is a taking, as when there is a physical appropriation, payment from the government becomes an issue of just compensation. *Horne*, 135 S. Ct. at 2429. "[J]ust compensation normally is to be measured by 'the market value of the property at the time of the taking.'" *Id., quoting United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984). Clearly with so many factual determinations to be made, at the stage the Court could not make a determination as to whether the City Council's ordinances caused regulatory taking.

---

[33] As the *Andrus* Court opined, 444 U.S. at 65,

Suffice it to say that government regulation--by definition--involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by *purchase*. "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Pennsylvania Coal*[, 260 U.S. at 413.]

Nevertheless regardless of the stage of the taking, the Fifth Circuit has held that a takings claim under the Fifth Amendment "is not ripe for adjudication until it is "ripe," i.e., until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides. *Severance v. Patterson*, 566 F.3d 490 (5th Cir. 2009). The Supreme Court has adopted a Fifth Circuit test for ripeness under the Fifth Amendment's takings clause: "such claims are not ripe until (1) the relevant governmental unit [administrative agency] has reached a final decision as to how the regulation will be applied to the land owner, and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides." *Urban Developers, LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292–93 (5th Cir. 2006), *citing Williamson County Reg'l Planning Comm's v. Hamilton Bank*, 473 U.S. 172 (1985). Plaintiffs fail to allege that they have met either prong as to any of the three Defendants. Thus any potential takings claim under the Fifth Amendment must be also dismissed for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under 12(b)(6) if it is not ripe. *Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1041 (5th Cir. 1998). Such is the case here. Ripeness is part of subject matter jurisdiction, which must be established by the party invoking federal jurisdiction. *Abdelhak*, 2011 13124298 at *10. Thus it must also be dismissed under Rule 12(b)(1).

Protections afforded under procedural due process rights granted in Article I, section 19, prohibiting deprivation of property, are congruent with those in the Federal Constitution. *Abdelhak v. City of San Antonio*, Civil No. SA-09-CA-804-FB, 2011 WL 13124298, at *9 (W.D. Tex. Dec. 6, 2011); *Price v. City of Junction, Texas*, 711 F.2d 582, 590 (5th Cir. 1983). "Under both federal and Texas law, regulatory takings must be ripe before a trial court will have subject matter jurisdiction over the claim." *City of Carrolton v. HEB Parkway South, Ltd.*, 327 S.W. 3d 787, 794 (5th Cir, 2010). Under both federal and state law, "there must be a final decision regarding the applications of the regulations to the property at issue" before a taking of a property issue is ripe. *Id., citing Mayhew v. Town of Sunnyvale*, 964 S.W. 2d 922, 928 (Tex. 1998). Just as a federal takings claim does not ripen until just compensation is denied, "Texas follows federal jurisprudence, which requires 'a final decision regarding the application of the regulations to the property at issue'. . . . A 'final decision' usually demands both a rejected development plan and the denial of a variance from the controlling regulations." *Id.* at 929. Plaintiffs have failed to allege that their claims are ripe under Article I, § 19, i.e., that they received a final decision about their flooding complaints to the relevant City entity and that they were denied just compensation or a variance from the restrictive regulations. Thus Plaintiffs' taking claims under the Texas Constitution, like those under the federal constitution, are not ripe and the Court dismisses them for

lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).

The City maintains that Plaintiffs' suit is time-barred. This Court agrees that all claims against all Defendants under § 1983 are time barred because Plaintiffs delayed in filing suit within two years of accrual of their claims under Texas Civil Practice & Remedies Code § 16.003(a) or four years under § 16.051, Texas' four-year residual statute of limitations, and because they do not properly allege a continuing violation that would extend the period. As discussed, since there is no federal statute of limitations for § 1983, the "federal courts borrow the forum state's general personal injury limitations period." *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). Under Tex. Civ. Prac. & Rem. Code 16.003(a) (2005)("Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the case of action accrues."). In contrast to the statute of limitations, federal law controls and defines the time of accrual as the time "when plaintiff knows or has reason to know of the injury which is the basis of the action." *Lavallee v. Listi*, 611 F.2d 1120, 1131 (5th Cir. 1980).

According to Plaintiffs' amended complaint, TIRZ 17 was created on July 21, 1999, with its original purpose to address drainage and mobility. The head of the RAF, Ed Browne, allegedly attended TIRZ

17 monthly board meetings since approximately 2004. Plaintiffs pleaded that their injury occurred in 2007 when Defendants allegedly changed the drainage pattern by widening and lowering Bunker Hill Road north of I-10, replaced storm sewers, and rebuilt Bunker Hill bridge, which caused flood damage. Furthermore Plaintiffs pleaded that at a City Council meeting in 2007 Plaintiffs "vocally expressed concerns that projects undertaken by or on approval of Defendants were making their flooding problems worse." They also assert that Defendants had "actual notice" that Plaintiffs were "victims of Defendants' actions" based on "in-person advocacy by Plaintiffs," which began with their first identified trip to City Council in 2009 when they began "advocating before City Council" and when they "put Defendants on actual notice." Plaintiffs clearly knew of their injury by 2009 when they were flooded, ten years after the RAF was formed to address such problems. Pointing to the first of three "historic" floods also in 2009, Plaintiffs blame them on Defendants' conduct once the TIRZ 17 was formed in 1999, before which the surrounding residential neighborhoods had not flooded, but did so afterwards. Plaintiffs' complaint reveals discrete, separate occurrences of flooding, related community meetings where Memorial area residents voiced their complaints to the City, to its Planning Commission, to its Flood and Drainage Committee, and to City Council. Even a single damaging flood is a discrete and obvious event which waives a red flag at residents. Also significant were the multiple studies conducted by the City, the Authority, and engineering firms (including the Walter P. Moore engineering firm

in 2003, Klotz Associates in 2004 and 2014, LAN Engineering in 2006, 2012, and 2014 Omega Engineering in 2008, and, in 2009, and the HCFCD, which indicate that substantial information was out there and Plaintiffs could and should have filed suit long before they finally did on May 25, 2016.

Not only did the two-year statute of limitations for personal injury expire by 2011 at the latest, but the residual statute expired by 2013. Because Plaintiffs cannot cure the problem, their claims are time barred and must be dismissed.

The Court agrees with Defendants that Plaintiffs fail to state a claim for municipal liability under § 1983 against any of them because Plaintiffs fail to state supporting facts identifying a policy, a policy maker to whom lawmakers have delegated policy-making authority, an ordinance, a regulation, a decision by a policy maker, or a widespread custom that fairly represents a municipal policy to deliberately, knowingly, and intentionally redirect flood waters from the commercial district to the residential areas, and constitute the moving force behind a violation of Plaintiffs' constitutional rights. The Zone and the Authority also complain that Plaintiffs fail to identify a specific policy, practice or custom sufficient to state a plausible claim for municipal liability under section 1983, nor shown that it or the final policy maker (identified in the Complaint ¶53 as the City Council) was the force behind a violation of their constitutional rights: "the Authority and TIRZ Boards recommend projects, *but the City Council has final approval*") was the moving force behind the alleged deliberate

deprivation of Plaintiffs' rights under the Fourth and Fourteenth Amendments. *See also* Home Rule Charter, City of Houston, Texas, Art. VII, § 10 ("All legislative powers of the City shall be vested . . . in the City Council."); Ex. A at § 4. Thus even if the claims were not time-barred, because Plaintiffs have failed to identify the requisite policy, they have failed to state a claim for which relief may be granted under Rule 12(b)(6).

As discussed, claims brought under § 1983 sound in tort. Plaintiffs fail to state a claim against the City for torts because the Texas Tort Claims Act did not consent to suit for the type it alleges here. The only possible tort that might fall into the three excepted areas of the Texas Tort Claims Act is "property damage . . . caused by the wrongful act or omission or the negligence of a[] [City] employee acting within his scope of employment if . . . the damage . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment." Tex. Civ. Prac. & Rem. Code § 101.021. There are no allegations of any motor vehicles or motor-driven equipment in the complaint. Moreover, although claiming that Defendants' governmental actions to maintain and improve drainage and reduce the number and severity of Houston's flooding during rain storms temporarily may have violated Plaintiffs' constitutional property rights during isolated storms, Plaintiffs failed to allege that Defendants took any action concerning Plaintiff's real property nor caused any particularized injury. Not only have they failed to identify what specific property was owned by which Plaintiff, but Plaintiffs only mention that governmental action relating to other,

non-Plaintiff owned property (two roads, two apartment complexes, and two commercial developments) deprived Plaintiffs of substantive due process and property rights under the Fourteenth Amendment and constituted a government seizure of their property in violation of the Fourth Amendment and their property rights in violation of Article I, Section 19 of the Texas Constitution. Plaintiffs fail to plead how their constitutional property rights were violated or to state any facts supporting the constitutional violation claims. Finally the City's actions in attempting to regulate drainage of flood waters for the health and safety of its public are legitimate use of its police power and rationally related to the welfare of its citizens.

The Court also agrees with the City that any state tort claims that might be asserted against the City without § 1983 in this action are based on the performance of governmental functions, enjoined on the City by Chapter 311 of the Texas Tax Code and Ordinance 1999-759, which created TIRZ 17, and against which it is protected by governmental immunity derived from the State of Texas's sovereign immunity. *See* footnote 11 of this Opinion and Order. Because the Court lacks subject matter jurisdiction over them, the Court dismisses the governmental functions claims against the City under Federal Rule of Civil Procedure 12(b)(1).

As discussed previously and demonstrated by the Zone, the Zone is not a "suable entity," separate and apart from the City. Instead the Zone is defined as a particular geographic area of the City, for which the City has not taken the steps to empower the Zone with

jural authority.  Ex. A, p. 1 (creating and designating the Zone as a "contiguous geographic area of the City"); *Darby*, 939 F.2d at 313 (5th Cir. 1991)("The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'  Fed. R. Civ. P. 17(b)."), and *Crull v. City of New Braunfels, Tex.*, 267 Fed. Appx. 338, 341-42 (5th Cir. 2008)(citing *Darby*)("In order for a plaintiff to sue a department of a city, that department must enjoy a separate legal existence.  Unless the political entity that created the department has taken 'explicit steps to grant the servient agency with jural authority, the department lacks the capacity to sue or be sued.").  The Home Rule Charter of the City of Houston, which is a home rule municipality, reserved to the municipality the power to sue and be sued.  Home Rule Charter, City of Houston, Texas,  Art. II, § 1.  Sections 311.003 and 311.008 of the Texas Tax Code grant the City all authority to organize a tax increment reinvestment zone and all powers necessary to carry out its purpose, and the City so acted in creating the Zone.  *Darby*, 939 F.2d at 313 ("A Texas home rule city is organized not unlike a corporation.  Like a corporation, it is a single legal entity independent of its officers.  Also like a corporation, a Texas city is allowed to designate whether one of its own subdivisions can be sued as an independent entity.  Absent this authorization, [plaintiff's] suit no more can proceed against the police department alone [or the Zone here] than it could against the accounting department of a corporation. . . . Pursuant to these principles, we have held that a political subdivision cannot pursue

a suit on its own unless it is a 'separate and distinct' corporate entity. . . . [O]ur cases uniformly show that unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation *except in concert with the government itself.*")(emphasis added by this Court)(citations omitted).

Subsequently the Fifth Circuit clarified the last sentence. When sued in concert with the City, which has jural authority, suit would be against the Zone in its official capacity, and thus redundant of the suit against the City, not as a suit against the zone separately and independently. (In *Darby*, because Darby failed to show that the City of Pasadena granted its police department the capacity to sue and be sued in separate litigation, his suit sought to recover from a legal entity that does not exist for his purposes and the district court did not abuse its discretion by dismissing it.). Even if the county were added as a defendant in *Darby*, the court concluded that the plaintiff would still need to show that the county subdivision was an entity with a separate legal existence in order to engage in litigation with it in concert with the government. *Skyway Towers, LLC*, Civ. No. 5:14-CA-410-DAE, 2014 WL 3512837, at *5 (citing *Darby* and *Thomas-Melton v. Dallas County Sheriff's Dep't*, 39 F.3d 320 (5th Cir. 1994)(even if the county were added as a defendant, the plaintiff would still have to show that a county defendant was an entity amenable to suit in order to engage in litigation in concert with it with the government.). "[C]ourts routinely dismiss claims against government departments and agencies

that lack independent jural status, even when they are sued in concert with the government entity." *Lone Star Chapter Paralyzed Veterans of America v. City of San Antonio*, Civ. A. SA-10-CV-316-XR, 2010 WL 3155243, at *2 (W.D. Tex. Aug. 5, 2010)  In the instant case, neither the Zone's enabling Ordinance nor the City's Charter grants the Zone the power to sue or be sued.

The Court agrees with Plaintiffs that many questions remain as to whether this suit is moot.  In addition to those raised by the parties, the long history of repeated flooding in Houston, seemingly becoming even more frequent with climate change, makes it far more likely there will be recurrences than that there will not be and that Plaintiffs will suffer from them.  Thus in light of the circumstances, the Court finds that Plaintiffs' fears of horrendous flooding are not abstract and hypothetical.  They have shown how slow, temporary, and uncertain are the various steps in drafting and actually implementing the proposals in the CIPS for achieving the kind of flood control desired by the residents around TIRZ 17. Because Defendants offer nothing legally binding, they cannot show the "effects of any illegality have been completely and irrevocably eradicated."  The Court cannot and will not make a determination of whether the claims are moot as a matter of law.  But since they are all dismissed under Rules 12(b)(1) and/or 12(b)(6), the issue itself is moot.

Because the Court finds Plaintiffs have failed to plead viable claims as a matter of law, the challenge to the RAF's associational standing is also now moot.

As Defendants have pointed out, bringing their suit as one for declaratory judgment does not avoid dismissal without, a clear, unambiguous waiver of the City's governmental immunity and there is no such waiver for the City under the facts here. *City of Houston v. Williams*, 216 S.W. 3d at 828-29; *Sefzik*, 355 S.W. 3d at 621-22 & n.3. Furthermore, because Plaintiffs fail to assert a viable cause of action, their prayers for a derivative declaratory judgment or injunction must fail, too.

Accordingly, for the reasons stated above, the Court ORDERS the following:

(1) Plaintiffs' motion for leave of Court to file their consolidated Sur-Reply (Sur-Reply, #19 at p.4) is GRANTED;

(2) the City's first motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is GRANTED for the reasons indicated and its motion for more definite statement is MOOT (#5);

(3) Defendants the Zone and the Authority's motion to dismiss is GRANTED for the reasons indicated, and their motion for a more definite statement is MOOT (#7); and

(4) the City's Motion to Dismiss (#17) First Amended Complaint (#14) is GRANTED for the reasons indicated.

SIGNED at Houston, Texas, this _9th_ day of _May_, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE